**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth Harold GOURLEY,
Defendant–Appellant.**

**No. 87–1407.**

United States Court of Appeals,
Tenth Circuit.

Dec. 10, 1987.

David O'Meilia, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., Ben F. Baker and Susan W. Pennington, Asst. U.S. Attys., Tulsa, Okl., on the brief), for plaintiff-appellee.

Janelle H. Steltzlen, Tulsa, Okl., for defendant-appellant.

Before SEYMOUR and ANDERSON, Circuit Judges, and BROWN, Senior District Judge.[*]

* Honorable Wesley E. Brown, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

WESLEY E. BROWN, Senior District Judge.

Defendant Gourley was convicted by a jury of violating 18 U.S.C. Append. § 1202(a) in the United States District Court for the Northern District of Oklahoma. That statute prohibited possession by a convicted felon of any firearm transported in or affecting commerce.[1] Prior to his trial in federal court, Gourley was convicted of a similar offense (possession of a firearm after prior conviction of a felony) in an Oklahoma state court. The federal conviction arose out of the same facts as the state conviction.

Gourley raises three issues on appeal. First, Gourley contends that he was placed in double jeopardy because he was convicted and sentenced twice for the same act and because the government did not enforce its own *"Petite* policy." Second, Gourley contends that the government did not demonstrate an adequate nexus between interstate commerce and the firearm in his possession. Third, Gourley contends the sentence imposed by the U.S. District Court constituted cruel and unusual punishment.

## I. DOUBLE JEOPARDY

■ Gourley argues that his conviction and sentence in the U.S. District Court, after a conviction in state court based upon the same facts, violated the Double Jeopardy Clause of the Fifth Amendment. Gourley's argument is foreclosed by *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). In *Abbate,* the United States Supreme Court dealt with this issue by stating:

> We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory.... Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.
>
> It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.

359 U.S. at 194, 79 S.Ct. at 670, 3 L.Ed.2d at 733–34 [quoting from *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314, 317 (1922)].

In upholding the "dual sovereigns" concept, Supreme Court decisions have recognized that "in our federal system the State and Federal Governments have legitimate, but not necessarily identical interests in the prosecution of a person for acts made criminal under the laws of both. These cases reflect the concern that if the Double Jeopardy Clause were applied when the sovereign with the greater interest is not the first to proceed, the administration of criminal justice may suffer." *Rinaldi v. United States,* 434 U.S. 22, 28, 98 S.Ct. 81, 84, 54 L.Ed.2d 207, 213 (1977); *Bartkus v. Illinois,* 359 U.S. 121, 137, 79 S.Ct. 676, 685, 3 L.Ed.2d 684, 694 (1959); *Abbate,* 359 U.S. at 195, 79 S.Ct. at 670, 3 L.Ed.2d at 734. In *Lanza,* the Supreme Court stated that Congress was free to enact legislation to bar a federal prosecution following a

---

1. It should be noted that the statute under which Gourley was charged was repealed on November 19, 1986, and its provisions were incorporated within 18 U.S.C. § 922. [18 U.S.C. Append. § 1202 was repealed by Pub.L. 99–308, § 104(b), May 19, 1986, 100 Stat. 459.] Gourley was convicted on January 28, 1987, which was after the effective date of repeal of § 1202. Neither party raised this as an issue and it is not before this court on appeal. It does not appear that the repeal of the statute would have affected the Gourley's conviction, however, as Gourley's acts occurred and the indictment was returned before the statute was repealed. *See* 1

U.S.C. § 109, which states in part: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so provide, and such statute shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability...." *See also United States v. Bradley,* 455 F.2d 1181 (1st Cir.1972) [unless the repealing statute explicitly provides otherwise, the repeal of a criminal statute neither abates the underlying offense nor affects its attendant penalties with respect to acts committed prior to repeal].

state prosecution, but that in the absence of such legislation the U.S. Constitution was not a bar to successive prosecutions. *Lanza*, 260 U.S. at 385, 43 S.Ct. at 143, 67 L.Ed.2d at 318.

■ Gourley also argues that the failure of the government to follow its *"Petite* policy" requires that his conviction in the U.S. District Court be reversed. Gourley's argument has been considered by this circuit on several occasions and has been squarely rejected. *See e.g., United States v. Padilla*, 589 F.2d 481 (10th Cir.1978).

The *Petite* policy, as set forth in a Department of Justice manual for United States Attorneys, provides that, as a matter of Department of Justice policy, no federal trial for the same act which precipitated a state prosecution should commence unless the Attorney General determines that a compelling federal interest is involved. Gourley argues that his conviction should be reversed because the government failed to obtain the Attorney General's approval in this case. The law in the Tenth Circuit, however, is that the government's failure to obtain proper approval does not create an enforceable right in the defendant. *United States v. Thompson*, 579 F.2d 1184 (10th Cir.1978), *cert. denied* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243. *See also United States v. Gomer*, 603 F.2d 147, 150 (10th Cir.1979), *cert. denied* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 ["insofar as defendant is contending that deviation from the Justice Department's 'Petite policy' requires reversal, the law in this circuit simply forecloses that argument"]; *United States v. Padilla, supra; United States v. Valenzuela*, 584 F.2d 374 (10th Cir.1978); *United States v. Fritz*, 580 F.2d 370 (10th Cir.), *cert. denied* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). This court has previously stated:

> In *Thompson* we held that the *Petite* policy does not confer an enforceable right on the defendant in the absence of government request for dismissal. We there called attention to the previous line of decisions on this subject, noting that in each instance in which *Petite* was applied it had been invoked at the request

of the United States and not over the government's objections as here. We also pointed out that it was a policy statement of the Department of Justice; that it was based upon the Attorney General's determination that fairness required it; and that it was not a regulation but was simply a housekeeping provision. The Attorney General's statement, to be sure, was distributed to the U.S. Attorneys but that was to provide guidelines to the U.S. Attorneys. It followed that the failure to obtain the Attorney General's approval resulted in there being no enforceable right in the defendant.

*Valenzuela*, 584 F.2d at 376.

## II. INTERSTATE COMMERCE

■ Gourley next argues that the government did not demonstrate a sufficient nexus between interstate commerce and Gourley's possession of the firearm. Under § 1201(a), the government was required to prove that the firearm in Gourley's possession was in or affected commerce. 18 U.S.C. Append. § 1202 (1976). Proof that a firearm is manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was in or affected commerce. *United States v. Gregg*, 803 F.2d 568, 571 (10th Cir.1986), *cert. denied* —— U.S. ——, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987); *United States v. Johnson*, 722 F.2d 407 (8th Cir.1983).

The uncontroverted evidence at trial showed that Gourley was in possession of a Llama .357 Magnum on October 27, 1986, in Tulsa, Oklahoma. The government produced an expert witness from the Bureau of Alcohol, Tobacco and Firearms, who testified that the gun in question was manufactured in Spain. The gun itself was marked "Made in Spain." This evidence was sufficient to show that the firearm was "in or affecting commerce." *See Gregg, supra. See also Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) [interstate commerce nexus requirement satisfied by proof that the firearm possessed by the defendant had

previously traveled in interstate commerce].

## III. CRUEL AND UNUSUAL PUNISHMENT

Gourley's final contention is that the sentence imposed by the U.S. District Court constituted cruel and unusual punishment prohibited by the Eighth Amendment. Gourley was sentenced to a life term without the possibility of parole. The sentence was imposed pursuant to the enhanced sentencing provisions of 18 U.S.C. Append. § 1202(a), which provided that a person convicted under § 1201(a) who had three or more previous convictions of burglary or robbery, or both, should be sentenced to a minimum of fifteen (15) years imprisonment and that such persons should not be eligible for parole with respect to the sentence imposed under this subsection.

Gourley, prior to his conviction in the U.S. District Court, was sentenced by an Oklahoma state court to one hundred (100) years imprisonment. Ten (10) years of that sentence were imposed for the same acts as the U.S. District Court conviction—*i.e.,* possession of a firearm by a convicted felon. Gourley contends that a life sentence under § 1202 following a 100–year sentence in state court is grossly out of proportion to the severity of his crime.

Section 1202 was enacted as part of the Armed Career Criminal Act, which, as its name implies, was aimed at individuals who made a career out of committing dangerous crimes. *See United States v. Gant,* 691 F.2d 1159 (5th Cir.1982). As the record discloses, Gourley was exactly the type of defendant at which the statute was aimed. At the sentencing hearing, the trial judge summarized Gourley's criminal career as follows:

The record of the defendant indicates that ... at age nineteen he pled guilty to grand larceny. However, he was not represented by an attorney at that time and I take note of the fact that he wasn't represented. When he was twenty years old, he pled guilty to armed robbery. Again, waived representation by an attorney and was sentenced to fifteen years. At age twenty-six, carrying a prohibited weapon. That was a misdemeanor, but was convicted apparently by a court or jury. Age twenty-seven, convicted and sentenced to one or two years for swindling of worthless checks, attempted to escape from jail, sentenced to three years. Age twenty-seven, armed robbery. Age twenty-seven, sentenced to five years. Burglary at the age of forty-four, pled guilty, sentenced to ten years. Age forty-six, possession of marijuana and controlled drugs, convicted, sentenced to six months on each count.... Burglary, second degree, convicted, sentenced to two years. At age forty-eight possession of firearms after former prior convictions, convicted and sentenced to two and a half years, and then the convictions, one for forty years, one for forty years, and two convictions for ten years each...."

Transcript of Sentencing, Supp. Vol. IV, p. 17.

Gourley was arrested on October 27, 1986, by undercover police investigating the possible sale of narcotics at a Tulsa motel. Two of the officers went to a room at the motel and attempted to purchase narcotics. While the two officers were waiting, Gourley burst into the room brandishing a sawed-off shotgun. Gourley pressed the shotgun up against the throat of one of the officers. A struggle ensued, during which Gourley attempted to pull out a second gun, the .357 Magnum, from his waistband. Finally, three officers were able to subdue Gourley.

Evidence produced at the sentencing hearing showed that there were firing pin impressions on a shotgun shell taken from the gun that Gourley pressed against the officer's throat. The trial judge concluded that had it not been for the malfunction of Gourley's weapon, at least one police officer probably would have been killed.

The Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Within this limitation, the determi-

nation of proper penalties for crimes is a matter for the legislature. If a sentence imposed is within the prescribed statutory limits, the appellate court generally will not regard it as cruel and unusual punishment. *United States v. O'Driscoll,* 761 F.2d 589, 599 (10th Cir.1985), *cert. denied* 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986); *United States v. LeMon,* 622 F.2d 1022 (10th Cir.1980); *United States v. Baer,* 575. F.2d 1295 (10th Cir.1978); *Adams v. United States,* 266 F.2d 819 (10th Cir.1959).

■ Gourley maintains that a life sentence for possession of a firearm is out of proportion to the severity of his crime. The circumstances surrounding Gourley's arrest, however, and his eleven prior felony convictions justify the trial judge's decision to sentence him to life in prison. The trial judge considered all of the relevant factors in reaching his decision, including the fact that Gourley was already under a 100–year sentence imposed by Oklahoma and arising out of the same incident as the federal offense. The judge considered the fact that it appeared to be a mere fortuity that one or more police officers were not killed during Gourley's arrest on October 27, 1986. The trial judge also considered Gourley's eleven prior felony convictions and the fact that more than half of those prior crimes involved the use of firearms. As such, this case is clearly distinguishable from *Solem v. Helm, supra,* in which the Supreme Court struck down a life sentence based on "relatively minor" felonies. *Cf. Seritt v. Alabama,* 731 F.2d 728 (11th Cir. 1984), *cert. denied* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 433 [a mandatory life sentence imposed on a defendant, after previous felony convictions, does not constitute cruel and unusual punishment].

The most important factor in our decision to uphold the district judge's sentence is the fact that the sentence imposed was permissible under the statute enacted by Congress. *See former* 18 U.S.C. Append. § 1202(a), now codified at 18 U.S.C. § 922(g). As the Supreme Court has stated, the purposes of a recidivist statute, like § 1202(a), are:

... to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.

*Rummel v. Estelle,* 445 U.S. 263, 284, 100 S.Ct. 1133, 1144–45, 63 L.Ed.2d 382, 397 (1980). In this case, Gourley's record has amply demonstrated that convictions and imprisonment do not deter him from returning to crime once he is released. *See Rummel,* 445 U.S. at 278, 100 S.Ct. at 1141. Because the hope of rehabilitation is unrealistic in a case such as this, the sentencing judge must look to other factors in making his decision, such as the desire to prevent repeated crimes by the defendant and to deter others who would commit similar crimes. The judge properly considered those factors in the present case and we hold that Gourley's sentence was proportionate to the crime for which he was convicted. *Cf. Seritt v. Alabama, supra* [life sentence without parole upheld for conviction on armed robbery after three prior felony convictions]; *Corbett v. Bordenkircher,* 615 F.2d 722 (6th Cir.1980), *cert. denied* 449 U.S. 853, 101 S.Ct. 146, 66 L.Ed. 2d 66 [imposition of life sentence upon petitioner as habitual offender for three burglary convictions was not cruel and unusual punishment]; *Baker v. State,* 394 So.2d 1376 (Miss.1981) [life sentence without parole based on conviction for being a felon in possession of concealed weapon upheld considering the nature of defendant's prior convictions].

The conviction and sentence are AFFIRMED.