UNITED STATES of America, Plaintiff,

v.

**James GARRETT, Defendant.**

No. 88 CR 807.

United States District Court,
N.D. Illinois, E.D.

April 12, 1989.

---

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

A jury convicted James Garrett of three offenses: possession of a firearm by a felon (18 U.S.C. § 922(g)); possession of a weapon to facilitate a narcotics trafficking offense (18 U.S.C. § 924(c)); and possession of a controlled substance with intent to distribute (21 U.S.C. § 841(a)). The ultimate question for this court is the proper sentence under the Federal Sentencing Guidelines.

Mr. Garrett has moved to strike the Guidelines calculation. He raises three issues. First, he claims the government failed to prove that he meets the criteria for enhanced penalties under 18 U.S.C. § 924(e) and 21 U.S.C. § 841(b)(1)(C). Second, assuming that he is subject to statutory enhancement, he challenges his sentence under the Federal Guidelines. He claims the Guidelines double count his criminal history, in violation of his Fifth Amendment right to be free from double jeopardy. Finally, he challenges the Guidelines sentence as cruel and unusual punishment.

The first two claims are rejected and, for the reasons indicated below, it is not necessary to reach the third.

### CONVICTIONS FOR STATUTORY ENHANCEMENT PURPOSES

Mr. Garrett is no stranger to the criminal court. He has seventeen prior convictions and many more arrests. To enhance the punishment on the first and third counts, the government identified five of those convictions—three for armed robbery, one for unlawful use of weapons, and one for possession of a controlled substance with intent to distribute. Whether the government successfully connected Mr. Garrett to these prior convictions is the subject of his first motion.

Mark Rotert, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

John T. Theis, Chicago, Ill., for defendant.

The convictions identified by the government are the following:

(1) Armed robbery, December 20, 1968, Circuit Court of Cook County, Illinois, No. 68–3423;

(2) Armed robbery, October 30, 1973, Circuit Court of Cook County, Illinois, No. 73–119;

(3) Armed robbery, August 31, 1976, Circuit Court of Cook County, Illinois, No. 74–6387;

(4) Possession of a controlled substance with intent to distribute, October 10, 1984, Circuit Court of Cook County, Illinois, No. 84–3410;

(5) Unlawful use of weapons, October 10, 1984, Circuit Court of Cook County, Illinois, No. 84–3838.

The government also notified defendant of a grand larceny conviction in Jackson, Mississippi on June 10, 1986, but at the hearing advised the court that it would not rely on this conviction.

At the outset of the hearing, the defendant denied he was the person convicted of the 1968 and 1973 armed robbery convictions. He admitted he was the person charged in the 1976 armed robbery conviction, but contended that his attorney and the trial judge entered a plea of guilty for him in his absence. Defendant concedes that he was the person convicted and sentenced for the two offenses committed in 1984.

■ As to the three armed robberies, the government called a treasury agent who testified that he obtained certified copies of the three conviction orders. He explained that he obtained the fingerprint records of the person confined as a result of these convictions and caused them to be compared with the known fingerprints of defendant Garrett. The government then introduced a fingerprint analysis which shows the fingerprints of the person confined as a result of the convictions to be the same as defendant's fingerprints taken from the defendant on April 9, 1988. It also appears from these records that defendant has from time to time used the names James E. Garrette and George Bey. This evidence was sufficient to show defendant to be the person convicted of the 1968, 1973, and 1976 offenses.

■ Defendant testified on his own behalf that the plea of guilty shown on the record of the 1976 conviction was entered in his absence by his attorney and the trial judge. He further stated that he served a period of incarceration on this sentence and was paroled. Defendant, when he testified, did not contest that he was the person convicted of the 1968 and 1973 offenses.

Defendant did not support his assertion that the 1976 conviction was obtained by the misconduct of his attorney and the trial judge. He did not introduce a transcript of the proceedings or call his attorney—who is a well known practitioner in this court. Defendant's testimony is not credible and does not overcome the proof presented by the record of convictions received in evidence.

Accordingly, the court finds that defendant is the person named in each of the convictions presented by the government and rejects the contention that the 1976 conviction was obtained in defendant's absence.

#### A. 18 U.S.C. § 924(e)

■ Section 924(e), Title 18, United States Code, allows the state to seek an enhanced penalty for violation of 18 U.S.C. § 922(g), felon in possession of a firearm, if the defendant has three prior convictions for either a violent felony or a serious drug offense. *See generally United States v. Lowe*, 860 F.2d 1370 (7th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). Armed robbery is a violent felony, within the meaning of 18 U.S.C. § 924(e)(2)(B)(i). *United States v. Jackson*, 835 F.2d 1195, 1197 (7th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). The government seeks this enhancement. Since Mr. Garrett has three prior convictions for armed robbery, his sentence on this Count is enhanced from a maximum of five years incarceration to a minimum of 15 years, without possibility of parole.

#### B. 18 U.S.C. § 924(c)(1)

■ Section 924(c)(1), Title 18, United States Code, "provides for an enhanced

punishment" if the defendant uses a firearm to facilitate a narcotics trafficking offense. Mr. Garrett is subject to this enhancement since he was convicted of a trafficking offense—possession with intent to distribute—and he was in possession of a handgun, which is considered drug paraphernalia. Any sentence he receives on Counts One and Three, therefore, must be followed by a minimum five year term, without parole.

### C. 21 U.S.C. § 841(b)(1)(C)

■ Section 841(b)(1)(C), Title 21, United States Code, stiffens the penalty for a violation of 21 U.S.C. § 841(a), possession of a controlled substance with intent to distribute, for any defendant who has a prior felony narcotics conviction. Mr. Garrett, convicted in Count Three of violating § 841(a), is subject to this recidivist provision because he has a prior conviction in state court for the same offense: possession of a controlled substance with intent to distribute. His sentence on this count, therefore, is a maximum of 30 years incarceration followed by a mandatory term of six years supervised release.

The court concludes that Mr. Garrett is subject to the enhanced penalties in 18 U.S.C. § 924(c), 18 U.S.C. § 924(c)(1), and 21 U.S.C. § 841(b)(1)(C). The next issue is the appropriate sentencing range under the Guidelines.

### SENTENCING SCHEME

#### A. Background

Mr. Garrett, as the above discussion amply illustrates, has had more than a little contact with the law. On the other hand, it seems fair to note that he has never been convicted of causing injury. One can express outrage at a life of criminal activity without losing sight of the very real difference between crime, and crime which injures others. As Judge Posner recently observed, the absence of injury during a career of crime "is relevant to deciding whether the sheer enormity of [the defen-

dant's] conduct warrants imprisonment for the rest of his life...." *United States v. Jackson*, 835 F.2d at 1198 (7th Cir.1987) (Posner, J., concurring). And life imprisonment will almost certainly follow from a strict adherence to the Sentencing Guidelines in this case. Mr. Garrett is now 42. A 42 year old black male in this country has a life expectancy of 28.7 years. 2 Vital Statistics of the United States, 11 (1986). Yet, as demonstrated below, his minimum Guidelines sentence is 30 years without parole, followed by a mandatory consecutive term of five years on Count Two, which is not counted on the Guidelines. Mr. Garrett will, in other words, die in prison if he is sentenced under the Guidelines.

And for what? For the past, no doubt, since by definition recidivist statutes penalize the defendant for what he did once, and not only for what he has done now. *See United States v. Jordan*, 870 F.2d 1310, 1315 (7th Cir.1989). But principally, Mr. Garrett is to be sentenced for what he has most recently done. *Id.* It is this offense which ultimately costs him his liberty, since but for this case he would, presumably, still be on parole. To that end, the facts in this case take on particular significance.

■ In April, 1988, Mr. Garrett drove to an alley in Chicago, parked, and approached a woman who the police believed was a prostitute. Garrett and the woman walked into the alley toward his car, where they were immediately followed and approached by two Chicago police officers. One officer shined his flashlight into the front seat where he saw a torn brown bag containing a number of packets known as "snow seals." The officer removed the bag and discovered a .25 caliber pistol. The police recovered only 3.5 grams of cocaine from the packets. This is a small amount, and but for the fact that the cocaine was divided into a number of packets, would not give rise to an inference of any intent to distribute. They arrested Mr. Garrett and released the woman. She did not testify at trial.[1]

---

**1.** Mr. Garrett has also moved for a new trial or in the alternative for a judgment of acquittal.

This may be dealt with briefly. In addition to

That, ultimately, is the conduct which consigns Mr. Garrett to die in prison.

## B. Sentence Under the Statutes

The maximum statutory penalty on Count One, felon in possession of a firearm, is a fine of up to $5,000 and/or imprisonment of up to five years. 18 U.S.C. § 924(a)(1)(D). This sentence, however, is subject to statutory enhancement and Mr. Garrett, as noted earlier, qualifies for this enhancement. His minimum statutory sentence on Count One is 15 years. Conviction on Count Two requires a mandatory five year term, without parole, to run consecutive to any other term imposed. 18 U.S.C. § 924(c). And on Count Three, upon proof of a prior felony narcotics conviction, the statute calls for a maximum 30 year prison term and mandatory six year period of supervised release. 21 U.S.C. § 841(b)(1)(C). Mr. Garrett is subject to this enhancement as well, since he has a prior felony conviction for possession of a controlled substance with intent to distribute. The sentences on Count Three and Count One may run concurrently.

Mr. Garrett's minimum period of incarceration *under the statutes* would be twenty years: 15 years without parole on Count One (with a concurrent sentence on Count Three), followed by five years on Count Two.

## C. The Guidelines

Under the Guidelines, the critical passage appears at Sec. 4B1.1, which provides:

Career Offender

A defendant is a career offender if (1) the offender was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the offender has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the *offense level for a career criminal from* the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Minimum | Offense Level |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 years | 32 |
| (D) 15 years or more, but less than 20 years | 29 |
| (E) 10 years or more, but less than 15 years | 24 |
| (F) 5 years or more, but less than 10 years | 17 |
| (G) More than 1 year, but less than 5 years | 12 |

Under this definition, Mr. Garrett is a career offender: he was at least eighteen years old; the instant offense is a controlled substance felony; and he has at least two prior convictions for a crime of violence, since armed robbery is a crime of violence under the Guidelines. *See* § 4B1.2 Note 1.

The proper "Offense Statutory Maximum," for the purposes of the Table is § 4B1.1, is more complicated. As noted, the unenhanced statutory term on Count One is a *maximum* of five years. The enhancement raises the *minimum* statutory term to 15 years, but sets no maximum. Statutes without a stated maxima,

the paragraph above, the facts adduced at trial were as follows:

The defendant told the arresting officers his name and said he was a "reverend" and that he was called "Rev." (He so identified himself at the hearing.) The government introduced the testimony of Leandrew Taylor of Greenwood, Mississippi, who testified that he purchased four guns at a pawn shop in Greenwood for a friend who introduced him to a person called "Rev." The serial number of the gun found in the vehicle matched one of the guns purchased. Taylor did not identify the defendant.

Anthony Mugnolo testified that he once owned the car in which the contraband was found but that it was sold in March 1988 to a "heavy man" who said he was buying it for his wife. The title to the car was not transferred from Mugnolo's name. Mugnolo did not identify the defendant. The defendant is a tall, heavy man.

The substance found in the automobile in several envelopes totaled 19 grams, only 3.5 grams of which was cocaine. It was because the quantity was divided into 38 packets and defendant was in possession of a weapon, which as noted is regarded as drug paraphernalia, that sufficient evidence was introduced to allow a reasonable jury to infer an intent to distribute.

This is sufficient evidence to support the jury verdicts.

though, are presumed to authorize a maximum of life imprisonment. *United States v. Jackson*, 835 F.2d at 1197; *United States v. Bridges*, 760 F.2d 151, 153 (7th Cir.1985). As a result, Mr. Garrett's "Offense Statutory Maximum" is life imprisonment, and his offense level under the Guidelines jumps to 37.[2]

The Guidelines sentence for a Category VI defendant with an offense level of 37 is 30 years to life. On top of that, Mr. Garrett would receive an additional five years on Count Two, since that sentence must run consecutive to any other term imposed. 18 U.S.C. § 924(c). Mr. Garrett, under the Guidelines, will serve a minimum of 35 years in prison, without parole.

## CONSTITUTIONAL CLAIMS

The gap between the statutory and Guidelines minimum is 15 years. Mr. Garrett attacks the Guidelines sentence as a violation of the double jeopardy clause and as cruel and unusual punishment.

### A. Double Jeopardy

■ The Double Jeopardy Clause prevents multiple punishment for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Mr. Garrett seizes on this principle and argues that his sentence under the Guidelines constitutes impermissible multiple punishment. It does not.

The centerpiece to his argument is that the Guidelines double count his criminal history. According to Mr. Garrett, his criminal history subjects him first to a statutory enhancement, by increasing the penalty from a five year maximum to a 15 year minimum (18 U.S.C. § 924(e)), and second to a Guidelines enhancement, by rendering him a Career Offender with a Category VI criminal history score. In addition, Mr. Garrett points out that the statutory enhancement, which creates the offense stat-

utory maximum of life imprisonment, is also what catapults him to an offense level of 37. That offense level, combined with his elevated criminal history Category, translates into a mandatory minimum 30 years, twice the statutory minimum. From this, Mr. Garrett concludes that the Guidelines count his criminal history twice, thereby subjecting him to multiple punishment for the same offense.

He is mistaken. The argument has intuitive appeal, but ultimately it misreads the Guidelines. The statutory enhancement in 18 U.S.C. § 924(e) creates a sentencing range of 15 years to life imprisonment. This enhancement, however, is, in effect, enhanced *again* by 28 U.S.C. § 994(h)—a provision which Mr. Garrett fails to consider. 28 U.S.C. § 994(h) instructs the Sentencing Commission to draft guidelines which incarcerate certain habitual offenders "at or near the maximum term authorized" by statute. Mr. Garrett, by virtue of his criminal history, is such an offender. 28 U.S.C. § 994(h)(1). Section 4B1.1 of the Guidelines in turn implements § 994(h).

The upshot is this: the first statutory enhancement in 18 U.S.C. § 924(e) raises the penalty to 15 years to life. The second statutory "enhancement" in 28 U.S.C. § 994(h) eliminates the 15 year minimum and leaves only life imprisonment as the "maximum term authorized." The Guidelines implement these statutes by calling potentially for a life sentence for someone in Mr. Garrett's position. The Guidelines, in other words, track the statutory scheme and therefore do not impose a sentence beyond that called for by statute.

Taken together, the two statutes, 18 U.S. C. § 924(e) and 28 U.S.C. § 994(h), impose a single punishment for a single offense. While admittedly severe, they are nothing other than two recidivist statutes acting in concert. As such, they do not constitute a new jeopardy. *Gryger v. Burke*, 334 U.S.

---

**2.** To put this offense level enhancement in perspective, it is noteworthy that the offense level *without* the enhancement would be 12. Even applying a criminal history Category of VI, Mr. Garrett's sentence would be 30–37 months, plus five years on Count Two, for a total maximum of just over eight years. This eight year sen-

tence would be a fair punishment for the *actual conduct* Mr. Garrett engaged in. It is only the quantum leap in offense level, mandated by the fact that Congress failed to provide a statutory maximum in the enhancement at 18 U.S.C. § 924(e), and the Guidelines, that multiplies Mr. Garrett's Guidelines sentence by over fourfold.

728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948); *United States v. Towers*, 775 F.2d 184, 192 (7th Cir.1985).

### B. Cruel and Unusual Punishment

While recidivist statutes do not constitute a new jeopardy, they may constitute cruel and unusual punishment. *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). Mr. Garrett raises this argument as well.

The Supreme Court held in *Solem* that a life sentence without possibility of parole, based on a South Dakota recidivist statute, constituted cruel and unusual punishment when imposed on a defendant convicted of passing a "no account" check for $100, where his prior six felony convictions were for "relatively minor criminal conduct." *Id.* at 279, 280, 284, 303, 103 S.Ct. at 3004, 3005, 3006, 3016.

The facts here, by contrast, seem to bear little resemblance to those in *Solem:* both the offense and Mr. Garrett's criminal history are substantially more serious, and his sentence under the Guidelines is potentially to a term of years. One Court of Appeals has in fact suggested that any sentence short of either the death penalty or life imprisonment without possibility of parole cannot implicate *Solem*. *United States v. Rhodes*, 779 F.2d 1019, 1028 (4th Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).

The court has found no decision addressing the Eighth Amendment implications of a sentence imposed under 18 U.S.C. § 924(e) and 28 U.S.C. § 994(h). Recently, however, the Tenth Circuit rejected an Eighth Amendment challenge to a life sentence, without possibility of parole, for violation of the predecessor statute to § 924(e). *United States v. Gourley*, 835

F.2d 249, 252–53 (10th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988).[3] In addition to *Gourley*, at least three Courts of Appeal, including the Seventh Circuit, have considered whether a 15 year sentence, imposed under § 924(e), constitutes cruel and unusual punishment. All concluded it does not. *United States v. Sanchez*, 859 F.2d 483, 486 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989) (15 year term "falls ... far short of the questionable [constitutional] zone...."); *United States v. Gilliard*, 847 F.2d 21, 27 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989); *United States v. Rush*, 840 F.2d 580 (8th Cir.1988) (predecessor statute to § 924(e)).

Fortunately, the court need not decide whether a 35 year term in this case constitutes cruel and unusual punishment. Consistent with the time-honored admonition to avoid constitutional issues, the court expresses no opinion on the question since, for the reasons given immediately below, the court will depart from the Guidelines range.[4]

### DEPARTURES

Section 5K2.0 provides in relevant part:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in

---

**3.** *Gourley*, however, is in some respects distinguishable from this case, since the defendant there attacked and tried to kill two police officers with the guns in his possession. These facts figured prominently in the sentence he received. *Id.* at 253. Here, by contrast, Mr. Garrett did not resist arrest. In fact, there is no suggestion Mr. Garrett ever touched the gun in his car, or that it was even loaded.

**4.** The court could not similarly avoid the double jeopardy question since with that argument Mr. Garrett challenged the entire career offender provisions in the Guidelines. *Any* sentence imposed upon Mr. Garrett which either treated him as a Category VI offender or treated the offense level as 37, was invalid under his theory, even with a downward departure. As a result, the double jeopardy question could not be avoided.

advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing.

This section lists a number of grounds for departure. The list is not intended to be comprehensive, however, and "the court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines ..., if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." *Id.*

The basis for departure in this case appears at, and is expressly authorized by, § 4A1.3, which provides in part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past conduct *or the likelihood that the defendant will commit other crimes,* the court may consider imposing a sentence departing from the otherwise applicable guideline range....

(*Emphasis added*). And the commentary to this section similarly provides:

> This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur.... This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history *or likelihood of recidivism....*

(*Emphasis added*).

It is the likelihood of recidivism—or more precisely, the relative improbability of recidivism—that justifies a departure in this case. Mr. Garrett, as noted, is 42. Under the Guidelines, he would die in prison. Even a twenty year sentence will mean incarceration nearly equal to his life expectancy. And twenty years in prison followed by six years of supervised release means that Mr. Garrett will spend out his life either in custody, or in supervision. He will never be a free man. Violent crime, the sort of conduct which earned Mr. Gar-

rett enhancements under § 924(e) and § 994(h), is rare among those over 60. FBI, Crime in the United States: Uniform Crime Reports, 174–75, 175–77 (1987). In fact, after one's twenties, criminal activity in general declines steadily. *Id.* As a rule in this society, the risk of criminal activity is smallest for those with the fewest years to live. "A civilized society locks up such people [as Mr. Garrett] until age makes them harmless but it does not keep them in prison until they die." *United States v. Jackson,* 835 F.2d at 1200 (Posner, J., concurring).

The Guidelines sentence in this case is all the more extreme when juxtaposed with the facts of the instant offense. Granted, Mr. Garrett had no right to be in possession of a gun, and he indeed had cocaine. But certainly some thought must be given to just what it was Mr. Garrett did in this case. *Compare United States v. Gourley,* 835 F.2d 249 (10th Cir.1987) (life sentence without possibility of parole for felon in possession of firearm who tried to kill police officer by holding gun to officer's throat and pulling trigger). Mr. Garrett, by contrast, ran afoul of the law when he attempted to pick up a prostitute. It simply cannot be said that the law sees no distinction between these cases. Accordingly, the Guidelines mandatory minimums to be considered at the time of sentencing will be a minimum of 15 years custody without parole on Count One, a minimum of five years consecutive custody on Count Two, and a maximum of 30 years custody on Count Three with a minimum six years supervised release.

IT IS THEREFORE ORDERED as follows:

(1) Defendant's post-trial motions, including a motion for a new trial and judgment of acquittal, are denied.

(2) The sentencing ranges to be applied are as stated in this order.