**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4259

DWIGHT LAMONT HUNTER, a/k/a Dee,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-94-111-MU)

Submitted: September 30, 1998

Decided: October 29, 1998

Before ERVIN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael W. Patrick, HAYWOOD, DENNY & MILLER, L.L.P., Dur-
ham, North Carolina, for Appellant. Mark T. Calloway, United States
Attorney, Robert J. Conrad, Jr., Assistant United States Attorney,
Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dwight Lamont Hunter appeals his conviction by a jury of conspiracy to possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846 (1994). See also 21 U.S.C. § 841(a) (1994). Hunter played a pivotal role in a conspiracy to distribute crack cocaine in and around Kannapolis, North Carolina. Raphael Ulloa, a New York crack cocaine dealer, supplied hundreds of kilograms of crack cocaine to Hunter in weekly multi-kilogram quantities. The testimony of Hunter's "lieutenants," Steve Whitaker, James Nance, and Bernard Adams described the enormous scope and detailed operations of the conspiracy.

On this testimony, and that of numerous others, the jury found Hunter guilty of the conspiracy charge. Over Hunter's objections, the district court adopted the presentence investigation report's recommendation that Hunter receive a two-level enhancement under U.S. Sentencing Guidelines Manual § 3C1.1 (Nov. 1994) and a four-level enhancement under USSG § 3B1.1(a). In addition, the district court found that it had no discretion to depart from the Guideline-mandated life sentence based on Hunter's contention that as he grew older serving his sentence, he would be less likely to commit more crime upon his release. On its conclusion that it lacked this discretion, the district court sentenced Hunter to life in prison.

In this appeal, Hunter makes numerous assignments of error both with respect to his conviction and his sentence. Hunter contends that the district court erred in failing to suppress the results of the execution of a search warrant and in failing to suppress evidence of telephone numbers taken from his pager without a warrant. Hunter also claims that the district court erred by admitting hearsay evidence and failing to instruct the jury on multiple conspiracies. In attacking his sentence, Hunter assigns error to the district court's application of a

2

two-level enhancement for obstruction of justice and a four-level enhancement for his role in the offense. Hunter also suggests that the district court erred in failing to make a downward departure from his life sentence. Finally, Hunter generally attacks the Guidelines Manual's disparate treatment of crack cocaine and powder cocaine. Finding no merit to any of these assignments of error, we affirm the district court's judgment and sentence.

I

Hunter first attacks the district court's denial of his motion to suppress the results of a search pursuant to a warrant issued for a house at 112 Waco Avenue in Kannapolis, North Carolina. Hunter notes that the affidavit did not contain information specifically linking drug activity to the house at 112 Waco Avenue. See, e.g., United States v. Ramos, 923 F.2d 1346, 1352 (9th Cir. 1991). Moreover, the affidavit did not mention 112 Waco Avenue. The district court denied Hunter's motion to suppress the single Western Union receipt seized during that search, concluding that the officers who executed the search relied on the warrant in good faith. See United States v. Leon, 468 U.S. 899, 920 (1984). Explaining the good faith exception, the Supreme Court held that evidence seized under a facially invalid search warrant will be suppressed "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926. We review de novo the determination of the district court that the good faith exception to the exclusionary rule applies. See United States v. George, 975 F.2d 72, 77 (2d Cir. 1992).

This good faith exception is not all-inclusive. A warrant that is "based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" is insufficient to support a finding of good faith, and any evidence received pursuant to that warrant must be excluded. United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995) (citing Leon, 468 U.S. at 923). The district court concluded that the omission of any reference to the target residence of the search warrant was a mere technical omission. However, the affidavit's complete failure to mention 112 Waco Avenue necessitates a reliance on the subjective knowledge of the executing officer that Hunter, as the target of the investigation and

3

subject of the affidavit, kept at least a part-time residence at 112 Waco Avenue. This reliance renders it difficult to conclude that the executing officers possessed an "objectively reasonable" belief in the existence of probable cause to search a dwelling not mentioned in the affidavit supporting the search warrant.

Even assuming this flaw in the warrant places the officers' actions in executing the warrant outside the good faith exception to the exclusionary rule, the admission of the evidence obtained from 112 Waco Avenue does not mandate reversal of Hunter's conviction. The admission of illegally seized evidence is subject to a harmless error review. See Franks v. Delaware, 438 U.S. 154, 162 (1978); United States v. Rude, 88 F.3d 1538, 1553 (9th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3465 (U.S., Jan. 6, 1997) (No. 96-780). For the assumed error in this case to be harmless, the Government must prove beyond a reasonable doubt that the single Western Union receipt seized and introduced into evidence did not contribute to the guilty verdict. See United States v. McCloud, 127 F.3d 1284, 1289 (10th Cir. 1997) (citing Chapman v. California, 386 U.S. 18, 24 (1967)).

Hunter contends that the Government cannot shoulder this burden because the receipt was necessary to corroborate the testimony of prosecution witnesses who testified regarding the flow of drug money in the conspiracy. Instead of being the "important corroboration" that Hunter suggests that it was, the receipt seized from 112 Waco Avenue was merely one of fourteen Western Union receipts introduced into evidence. Even in the absence of that receipt, there was ample evidence regarding the flow of money through the conspiracy. There were thirteen other Western Union receipts providing corroboration for testimony regarding the funding of the drug purchases. The fourteenth receipt merely provided incremental support for the Government's witnesses' credibility. As a result, we have no difficulty concluding beyond a reasonable doubt that the introduction of the single receipt seized in the search did not contribute to the guilty verdict. Assuming the district court erred in declining to suppress the evidence, that error was harmless.

Hunter next objects to the district court's ruling regarding the testimony of Detective John Roberts. At one point during his testimony, Detective Roberts stated that one of Hunter's co-conspirators, James

4

Nance, had informed him where Nance and Hunter stored their cocaine in the latter stages of the conspiracy to conceal it from the authorities. Hunter claims that the statement was inadmissible hearsay because Nance's statement was not in furtherance of his conspiracy with Hunter. See Fed. R. Evid. 801(d)(2)(E). A district court's evidentiary rulings should not be disturbed absent an abuse of discretion. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992). An abuse of discretion might arise if a district court bases its ruling on erroneous factual or legal premises. See James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993). The district court did not abuse its discretion in admitting this evidence.

It bears repeating that hearsay is "a statement, other than one made by the declarant while testifying . . ., offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). As the Government points out, this statement was not offered "to prove the truth of the matter asserted," but to provide an explanation for Detective Roberts' decision to search the location that Nance described. The truth of Nance's statement was borne out not only by Nance's own testimony regarding the location for storing cocaine, but also by the fact that Detective Roberts found exactly what Nance had described where Nance said it would be. The district court's ruling was not based on erroneous factual or legal premises.

Hunter next claims that the district court erred in denying his motion to suppress evidence of the telephone numbers the arresting officers discovered stored in Hunter's pager. The officers seized the pager when they arrested Hunter. Before his arrest, Hunter presumably had a reasonable expectation of privacy in the contents of the pager's memory. See United States v. Chadwick , 433 U.S. 1, 10-11 (1977). However, after his arrest, the contours of Hunter's rights are somewhat different. They are tempered by an arresting officer's need to preserve evidence. This need is an important law enforcement component of the rationale for permitting a search of a suspect incident to a valid arrest. See United States v. Robinson , 414 U.S. 218, 226 (1973). Because of the finite nature of a pager's electronic memory, incoming pages may destroy currently stored telephone numbers in a pager's memory. The contents of some pagers also can be destroyed merely by turning off the power or touching a button. See, e.g., United States v. Frost, 999 F.2d 737, 739 (3d Cir. 1993); United

5

States v. Meriwether, 917 F.2d 955, 957 (6th Cir. 1990). It is, therefore, imperative that law enforcement officers have the authority to immediately "search" or retrieve, incident to a valid arrest, information from a pager in order to prevent its destruction as evidence. See United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996). The motion to suppress was properly denied.

Hunter cites United States v. Sanchez, 32 F.3d 1002, 1004 (7th Cir. 1994), for the proposition that the arresting officers in this case were required to obtain a warrant to retrieve the telephone numbers from the memory of the seized pager. In that case, the Seventh Circuit only reported that the agents did, in fact, obtain a warrant. The court did not hold that the warrant was required by the Fourth Amendment. Furthermore, the Seventh Circuit has since expressly held that the exigent circumstances surrounding the potentially fleeting nature of the evidence contained in a pager justifies a warrantless "search" of the contents of the pager. See Ortiz, 84 F.3d at 984. The retrieval of telephone numbers from Hunter's pager was justified by the need to preserve evidence. As a result, the district court did not err in declining to suppress this evidence.

Hunter next contends that the district court erred by refusing to instruct the jury that the Government had the burden of proving the single conspiracy alleged in the indictment rather than a number of multiple conspiracies. There is no merit to this contention. A single conspiracy exists when there is "one overall agreement" or "one general business venture." United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988) (citations omitted). Whether the evidence at trial established a single conspiracy or multiple conspiracies is normally an issue for jury determination, see United States v. Banks, 10 F.3d 1044, 1051 (4th Cir. 1993), dependent on the overlap of geographic area, key actors, methods, and goals. See United States v. Crockett, 813 F.2d 1310, 1317 (4th Cir. 1987).

Defendants are not automatically entitled to an instruction about multiple conspiracies. "If the facts support only a single conspiracy, the jury need not be instructed about multiple conspiracies." Id. at 1316 (citations omitted). In addition, the failure to give a jury instruction on multiple conspiracies, even if the evidence supports such an instruction, is not reversible error unless a defendant can show he was

6

involved in a separate conspiracy unrelated to the overall conspiracy charged in the indictment. See United States v. Howard, 115 F.3d 1151, 1157 (4th Cir. 1997); United States v. Kennedy, 32 F.3d 876, 884 (4th Cir. 1994). Under these principles, the district court did not err in refusing to instruct on multiple conspiracies.

Hunter has provided little guidance, either to this court or the district court, as to how exactly he was prejudiced by the failure of the district court to instruct the jury on multiple conspiracies. Hunter states only that Ulloa, his co-conspirator, headed "at least" two conspiracies. Considering the evidence in the light most favorable to the verdict, see United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986), Hunter remained the center man of a conspiracy with the same geographic area, key actors, methods, and goals. There is no evidence that would suggest that Hunter was a member of a conspiracy entirely distinct from the overall conspiracy charged in the indictments. Accordingly, the failure to give a multiple conspiracy instruction is not reversible error. See Howard, 115 F.3d at 1157; Kennedy, 32 F.3d at 884. Because the facts supported only the existence of a single conspiracy, the district court did not err in refusing Hunter's requested instruction.

II

In challenging his life sentence, Hunter first objects to the application of a two-level enhancement for obstruction of justice applied to his offense level under the U.S. Sentencing Guidelines Manual § 3C1.1 (Nov. 1994). The enhancement was based on Hunter's dissemination of discovery materials he obtained as a result of his prosecution to his co-conspirators and his misrepresentations to his probation officer regarding his employment status which resulted in his pretrial release. Hunter contends that the district court not only failed to make the requisite findings of fact to apply the enhancement, but also that his conduct was not sufficient to trigger § 3C1.1.

The record on appeal reflects that in response to the presentence investigation report Hunter only objected to the application of § 3C1.1 to his conduct. There is no suggestion that Hunter disputed the accuracy of the findings of the report regarding what his actions were. Hunter's mere objection to the findings of the presentence

7

report with regard to this enhancement is insufficient to preserve any challenge to its factual content. Rather, Hunter had an affirmative duty to show that the information in the report was unreliable and articulate the reasons why its facts are untrue or inaccurate. Without such an affirmative showing, the district court is "`free to adopt the findings of the [presentence report] without more specific inquiry or explanation.'" United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) (quoting United States v. Mueller, 902 F.2d 336, 346 (5th Cir. 1990)). The record on appeal does not reflect Hunter's rationale for suggesting the unreliable nature of the factual findings of the report or that a single fact relating to this enhancement was untrue or inaccurate.

As the determination of whether § 3C1.1 applies to the facts is a legal issue, we review the district court's ruling de novo. See United States v. Hicks, 948 F.2d 877, 884 (4th Cir. 1991). The section instructs that "[i]f the defendant willfully obstructed or impeded . . . the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." USSG § 3C1.1. The commentary to this section further explains the types of conduct that do and do not warrant the enhancement. In providing "a non-exhaustive list of examples of the types of conduct to which this enhancement applies," Application Note 3 explains that, inter alia, the increase is triggered by conduct that involves "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." USSG § 3C1.1 comment. (n.3(h)). Hunter paid Larry Caldwell to falsely inform the probation officer that he employed Hunter during his release on bond. This scheme to show his probation officer that he had obtained gainful employment fell squarely within the application note and qualified Hunter for the two-level enhancement.**1**

_____

**1** Because the district court properly applied the two-level enhancement as a result of this conduct, we need not consider whether Hunter's distribution of discovery materials to his co-conspirators, resulting in their attempting to change their distribution methods, also qualified Hunter for an obstruction of justice enhancement. See United States v. Self, 132 F.3d 1039, 1043 (4th Cir. 1997) (stating enhancement does not apply where defendant obstructs investigation of another individual's offense), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3705 (U.S., Apr. 27, 1998) (No. 97-

Hunter also challenges the calculation of his offense level by claiming that the district court erred in applying a four-level enhancement for his leadership role in the conspiracy. See USSG § 3B1.1(a). Hunter suggests that because his associates in the conspiracy did not receive similar enhancements, it would be "fundamentally unfair" to impose the leadership enhancement to his sentencing calculus. The determination that a defendant is an organizer or leader in an offense is essentially a factual question reviewable for clear error. See United States v. Harriott, 976 F.2d 198, 202 (4th Cir. 1992). Although the finding must be articulated and supported by evidence, see id., the court may address any of the relevant factors. See United States v. Harris, 39 F.3d 1262, 1270-71 (4th Cir. 1994); see also USSG § 3B1.1 comment. (n.4). The testimony at trial showed that Hunter recruited people into the conspiracy, received the cocaine for the street-level distributors, received payments for the cocaine, and determined who would be actively distributing at any given time. There was no clear error in assigning Hunter this enhancement. The fact that his co-conspirators, who pled guilty, did not also receive an enhancement does not suggest any error. The sentencing court need not consider the sentence of a codefendant when imposing sentence. See United States v. Foutz, 865 F.2d 617, 622 (4th Cir. 1989).

Hunter also contends that because Raphael Ulloa was the organizer or leader of the conspiracy, Hunter should not have received a four-level enhancement. The Guidelines specifically note that "[t]here can, of course, be more than one person who qualifies as a leader or organizer." USSG § 3B1.1 comment. (n.4). Even assuming Ulloa was an organizer or leader in this conspiracy, this does not preclude the district court from applying the enhancement to Hunter. Because the district court did not commit clear error, there is no reason to disturb the court's sentencing calculation.

Hunter next challenges the district court's determination that it had no discretion to depart from the guidelines range based on a lower

_____

8510). But see United States v. Kirk, 70 F.3d 791, 797-98 (5th Cir. 1995) (noting that conduct supporting enhancement need not be "related directly to a particular offense."), aff'd en banc, 105 F.3d 997 (5th Cir. 1997), cert. denied, ___ U.S. #6D6D 6D#, 66 U.S.L.W. 3254 (U.S., Oct. 6, 1997) (No. 96-7759).

likelihood of recidivism. Hunter claimed that because he would grow older, and become less likely to commit crime as a result of his life sentence, the district court should consider a departure. The denial of a request for a downward departure is reviewable only if the district court mistakenly believed that it lacked the authority to depart. See United States v. Underwood, 970 F.2d 1336, 1338 (4th Cir. 1992). In this case, the district court stated that it lacked the authority to depart downward on the ground of the inevitable fact that Hunter would grow old during his service of a life sentence.

A downward departure may be warranted where the defendant's criminal history "significantly over-represents .. . the likelihood that the defendant will commit further crimes." USSG§ 4A1.3, p.s. That is not the case here. Hunter argues that his sentence, life in prison, as opposed to his criminal history, necessarily means that the likelihood that he will commit future crimes is diminished. It is well established that a sentencing court may depart from the applicable guideline range where "the court finds that there exists an aggravating or miti-gating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C.A. § 3553(b) (West Supp. 1998). It cannot seriously be contended that the Commission failed to take into account that a person serving a life sentence would grow older during the course of that sentence. See, e.g., USSG § 5H1.1. Accordingly, the district court did not err in con-cluding that it lacked the discretion to depart as a result of Hunter's life sentence.[2] See generally United States v. Atkins, 116 F.3d 1566, 1570-71 (D.C. Cir. 1997) (disapproving of sentencing court's consid-eration of defendant's age when released in granting downward departure), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3337 (U.S., Nov. 10, 1997) (No. 97-6320).

Finally, Hunter claims that the district court erred in applying the Guidelines provisions for crack cocaine. Hunter suggests that there is no rational basis to support the disparity in penalty between crack cocaine and powder cocaine and that the Guidelines provisions

_____

[2] Hunter directs the court's attention to United States v. Garrett, 712 F. Supp. 1327 (N.D. Ill. 1989). The case is not binding precedent and is dis-tinguishable on its facts. Garrett was not subject to a life sentence. See id. at 1335.

10

regarding crack cocaine are racially discriminatory. As counsel concedes, we have previously rejected Hunter's position. See United States v. Banks, 130 F.3d 621, 626 (4th Cir. 1997) (regarding rational basis), cert. denied, ___ U.S. #6D6D 6D#, 66 U.S.L.W. 3655 (U.S., Apr. 6, 1998) (No. 97-8221); United States v. Hayden, 85 F.3d 153, 157-58 (4th Cir. 1996) (same); United States v. Johnson , 54 F.3d 1150, 1163 (4th Cir. 1995) (noting increased penalty not racially discriminatory); United States v. D'Anjou, 16 F.3d 604, 612 (4th Cir. 1994) (rejecting argument based on equal protection); United States v. Bynum, 3 F.3d 769, 774-75 (4th Cir. 1993) (same). We have also previously rejected Hunter's contention that the definition of crack cocaine is unconstitutionally vague. See United States v. Pinto, 905 F.2d 47, 49-50 (4th Cir. 1990).

III

Finding no merit to any of Hunter's assignments of error, either at trial or in sentencing, we affirm the district court's judgment and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and would not aid the decisional process.

AFFIRMED

11