UNITED STATES of America,
Plaintiff–Appellee,

v.

Andrew HARRIOTT, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Andrew HARRIOTT, Defendant–
Appellee.

Nos. 91–5793, 91–5814.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1992.

Decided Sept. 24, 1992.

William P. Robinson, Jr., Robinson, Zaleski, Lindsey & Associates, Norfolk, Va., argued, for defendant-appellant.

Laura Marie Everhart, Asst. U.S. Atty., Norfolk, Va., argued (Kenneth E. Melson, U.S. Atty., Carol M. Marx, Sp. Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

A federal grand jury issued a three-count indictment charging Andrew Harriott with conspiracy to possess with intent to distribute cocaine base (crack), 21 U.S.C. § 846; interstate travel in the aid of racketeering, 18 U.S.C. § 1952(a)(3); and possession of crack with intent to distribute, 21 U.S.C. § 841(a)(1). At trial, a jury convicted Harriott of the first and third counts, but found him not guilty of the interstate travel charge. Harriott appeals, claiming an inconsistent jury verdict. The government appeals the district court's findings, under the Sentencing Guidelines, that Harriott was not an "organizer" and therefore not subject to a two-level increase in his offense level, and that Harriott had accepted responsibility and therefore was entitled to a two-level reduction in his offense level. We affirm the jury verdict, but reverse the district court's findings at sentencing.

## I

### A

The evidence at trial revealed the following facts. On May 22, 1990, Harriott drove from Norfolk, Virginia to New York City with Tonya Winborne, an 18–year–old woman with limited intelligence. In New York, Harriott drove to several apartment buildings, leaving Winborne in the car while he went to purchase crack. Harriott then directed Winborne to purchase a girdle and wear it, in order to hide four packages of crack. Harriott also gave Winburne several small plastic bags filled with crack. Next, Harriott drove Winborne to the bus station and bought her a bus ticket to Norfolk.

After Winborne boarded the bus, Harriott drove back to Norfolk. At 4:10 a.m. the next day, a highway patrolman stopped Harriott on the Chesapeake Bay Bridge Tunnel, which connects the Eastern Shore of Virginia to Virginia Beach. The patrolman gave Harriott tickets for reckless driving and driving without an operator's permit. Harriott had no identification with him, and he signed the summonses he received as "David Sinclair."

Winborne's bus arrived in Norfolk at 4:50 a.m., and Winborne began to wait in the station. Corporal Patrick McNett of the Norfolk Virginia Police Department, who was part of a drug interdiction team staking out the bus station, became suspicious of Winborne. Harriott, wearing a green Nike shirt, then entered the station. Investigator F.A. Williams, working with McNett, saw Harriott approach Winborne and overheard Harriott say, "You go to the car, I'm parked outside." Winborne went to Harriott's car. Subsequently, Investigator J.K. Watts, a female officer, went to Harriott's car and attempted to pat down Winborne. Winborne became very loud, flailing her arms and pulling away from Watts, and was arrested for disorderly conduct. A search incident to Winborne's arrest turned up four packages containing 475 grams of crack in Winborne's girdle and a number of small plastic bags of crack in Winborne's bra.

Winborne said that the car belonged to Harriott and that he was wearing a green Nike shirt. The officers found Harriott a block from the bus station, and arrested

him. The officers searched the car Winborne had been in and found the two traffic tickets Harriott had received shortly before, a key that matched one in Harriott's pocket, and a telephone bill in the name of David Sinclair.

Harriott was indicted for conspiracy to possess with intent to distribute crack, interstate travel in the aid of racketeering, and possession of crack with intent to distribute. In addition to the evidence described above, the government's expert in latent fingerprint examination testified at trial that he found a thumbprint of Harriott's on one of the plastic bags found on Winborne. The only other identifiable prints belonged to Corporal McNett and Investigator Watts. Harriott put on no evidence. The jury convicted Harriott of the conspiracy and possession counts, but found him not guilty of interstate travel in aid of racketeering.

B

Before sentencing, in a presentence report, the probation officer recommended a two-level increase in Harriott's offense level because Harriott had "acted as an organizer." The probation officer recommended against a reduction for "acceptance of responsibility" because Harriott continued to deny responsibility after his conviction. Harriott made no objections to the presentence report, which included a recommended sentencing range of 188–235 months in prison.

At sentencing, the district judge remarked:

If [the probation officer's] findings were all adhered to, [Harriott] would have an offense level of 36, criminal history category of I, and under the guidelines, 188 to 235 months, and that's too much, and he'll be on supervised release for at least five years.

The things that bother me in the case are that the little Winborne woman ... was prosecuted in the state court and ended up with no time; and this man, with no record, under the Sentencing Re-

form Act, would be—the minimum term would be fifteen years, and I repeat, in my view, that's too much under these circumstances. The 17 ounces of cocaine—there's nothing I can do with that. That comes out at a level 34.

I don't find that this man was a participant in a managerial sense that he should—that 2 points should be added under Chapter 3, part B. He was an entrepreneur insofar as being in an illegal trade, but under the circumstances, I'm not going to count that 2 points.

. . . .

And I'm considering ... that he understands—he accepts the responsibility for the fact that he's involved here. He hasn't really talked in the sense that he would—because he says—he agrees that he's been convicted; he's got to serve the sentence; and that he just doesn't see that there would be any advantage to him to talk about it, and I'm considering counting that as acceptance of responsibility and getting him down to 32, which is as low as I can go. That's 121 months.

J.A. at 309–10.

Later in the sentencing hearing, the district judge also stated:

I just think that a college student,* 3.0 grades, no prior record, ought not to come into court over this much crack with fifteen years, and I'm going to move it down to somewhere I feel like I can handle it; and if you don't like it you can appeal.

*Id.* at 313.

Next, the government's attorney questioned the probation officer about Harriott's acceptance of responsibility:

Q: [Despite the presentence report,] apparently you told Judge MacKenzie that he's accepted responsibility for the offense?

A: Yes, I told Judge MacKenzie that during an interview with Mr. Harriott, which I had at the jail, that he appeared to want to talk about his role in the offense. It appeared to me that he was

---

* Harriott was a 26–year–old college graduate at the time of his trial and sentencing.

protecting someone; he wanted to talk, but he realized that at that point there was nothing that could be done with his sentence; he was already convicted of a ten-year, at least, statutory provision.

Q: Did he tell you that or was that your impression from talking to him?

A: That—well, he told me that—"What good would it do at this point?"

Q: Then he did not specifically tell you that he was protecting—

THE COURT: Oh, I think that's accepting responsibility, Miss Marx. I don't have any trouble with that. I'm coming off with the 2 points. And I'll tell you that I pressed [the probation officer] to try to get the information that would let me come down 2 points. So you're in a losing situation.

MS. MARX: Thank you, Your Honor. It's the government's position that having accepted the fact that one has been convicted is not the same as having accepted the fact that one is—

THE COURT: Be my guest [and appeal]. The Fourth Circuit's just upstairs.

MS. MARX: Do you wish to hear argument at this time, Your Honor?

THE COURT: No. I'm going to give him 121 months.

*Id.* at 314–315.

## II

Harriott argues that his convictions should be overturned because of an inconsistent jury verdict. He reasons that, based on the evidence presented, the jury could not logically have found him not guilty of interstate travel in aid of racketeering while finding him guilty of conspiracy to possess with intent to distribute and possession of crack with intent to distribute. The government responds that the travel count had elements different from the drug counts or, alternatively, that the jury's not guilty decision on the travel count was an unreviewable exercise of lenity.

■ We first review the statute under which the jury found Harriott not guilty of interstate travel in aid of racketeering, which provides:

(a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

*and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3),* shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

18 U.S.C. § 1952(a) (emphasis added). The government correctly points out that Harriott's interstate travel charge had elements different from his drug charges. The elements of the travel charge were: (1) interstate travel, (2) intent, and (3) subsequent act. From the plain language of the statute, the jury was required to find that Harriott performed or attempted to perform one of the prohibited acts after he travelled across state lines. *See United States v. Porter,* 821 F.2d 968, 975 (4th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). The evidence at trial only showed that, after his arrival in Norfolk, Harriott approached Winborne and told her to wait in his car. From this limited evidence, the jury may have concluded that the government had not shown beyond a reasonable doubt that Harriott had performed or attempted to perform one of the prohibited acts after his arrival in Norfolk. While the evidence suggested that Harriott *intended* to perform some of those acts after returning to Norfolk, we noted in *Porter* that "[i]ntent alone does not satisfy the requirements of 18 U.S.C. § 1952." 821 F.2d at 975. As for Harriott's initial trip to New York, there was no direct evidence that he made that trip with the required intent. From the circumstances, it is conceivable that the jury may have found that Harriott acquired

his criminal intent only after his arrival in New York.

■ Alternatively, the reason for the jury's not guilty verdict may have been lenity. This court has held that inconsistent verdicts can stand when jury lenity is the basis for the inconsistency. *United States v. Harris,* 701 F.2d 1095, 1103 (4th Cir.), *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983). In addition, Harriott acknowledges the general rule that an inconsistent jury verdict is not a valid basis for an acquittal. *United States v. Arrington,* 719 F.2d 701, 705 (4th Cir. 1983), *cert. denied,* 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984). Because, at most, Harriott benefited from jury lenity, we see no basis to depart from the general rule. Accordingly, we affirm Harriott's convictions for conspiracy to possess with intent to distribute and possession with intent to distribute.

Next, the government appeals the district court's findings that (1) Harriott was not an organizer, and therefore not subject to a two-level increase in his offense level; and (2) Harriott had accepted responsibility, allowing him a two-level decrease in his offense level.

■ First, the Sentencing Guidelines direct the sentencing court to increase a defendant's offense level by two levels if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity" involving less than five participants. U.S.S.G. § 3B1.1(c). Whether a defendant has been an organizer is primarily a factual determination that we review under the clearly erroneous standard of review. *See United States v. Daughtrey,* 874 F.2d 213 (4th Cir.1989). In finding that Harriott's offense level should not be increased, the district court stated only that Harriott was not "a participant in a managerial sense," but that he was just "an entrepreneur." However, the evidence at trial showed that Harriott drove Winborne to New York, bought the crack by himself, had Winborne buy a girdle in which to hide the packages of crack, took Winborne to the bus station and bought her a bus ticket to Norfolk, and then met her in Norfolk and told her to go

wait in his car, all in furtherance of their conspiracy to possess and distribute the crack. Moreover, Harriott was older and better educated than Winborne. In view of this uncontroverted evidence and the district court's lack of articulated reasons for its finding, we must conclude that the court clearly erred in ruling that the two-level increase for organizers, leaders, managers, or supervisors did not apply to Harriott.

■ Second, the Guidelines direct the sentencing court to reduce a defendant's offense level by two levels "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). Determining whether a defendant has accepted responsibility is also a primarily factual question reviewable under the clearly erroneous standard. *See United States v. Daughtrey,* 874 F.2d 213 (4th Cir.1989). Here, the district court's sole reason for finding that Harriott had accepted responsibility for his criminal conduct was that Harriott agreed that he had been convicted. The probation officer only stated that Harriott seemed to want to talk about his conviction but did not do so, and that it appeared that Harriott might have been protecting someone. Together, these statements offer no support for a finding that Harriott "clearly demonstrate[d] a recognition and affirmative acceptance of responsibility," and we therefore must hold that the district court's finding as to Harriott's acceptance of responsibility was clearly erroneous. Having reversed the district court's findings as to Harriott's role in the offense and acceptance of responsibility, we remand this case for resentencing.

### III

■ It is perhaps understandable for sentencing judges, especially those familiar with pre-Guideline sentencing, to feel constrained by the Guidelines (as well as mandatory minimum sentences) on occasion. There may be a temptation to work backwards: to decide what sentence a defendant would have received before the Guidelines came into effect and then to apply

various Guidelines' provisions in order to approximate that sentence as closely as possible. While we recognize that such an approach may have personal appeal, we must admonish district courts instead to apply the Guidelines as written. Attempts, in effect, to manipulate the Guidelines in order to achieve the "right result" in a given case are inconsistent with the Guidelines' goal of creating uniformity in sentencing. A belief that a given sentence is too harsh (or too lenient) is more appropriately a legislative concern when, as in this case, there are no legal grounds for adjusting that sentence.

Although we affirm Harriott's convictions, because we have found two clear errors in Harriott's sentence, the judgment of the district court is hereby

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*