60 F.3d 826
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellant,
v.
Theodore T. RYBICKI, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellant,
v.
Karen D. RYBICKI, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore T. RYBICKI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore T. RYBICKI; Karen D. Rybicki, Defendants-Appellants.
 Nos. 94-5360, 94-5361, 94-5362, 94-5448.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 10, 1995.
Decided: July 13, 1995.
 
 ARGUED: John Nicholas Nassikas, III, Assistant United States Attorney, Alexandria, VA, for Appellant.
 Adams Harris Kurland, HOWARD UNIVERSITY SCHOOL OF LAW, Washington, DC, for Appellee Karen Rybicki; Charles Frederick Daum, HANSON & MOLLOY, Washington, DC, for Appellee Theodore Rybicki. ON BRIEF: Helen F. Fahey, United States Attorney, Mark J. Hulkower, Assistant United States Attorney, Vincent L. Gambale, Assistant United States Attorney, Alexandria, VA, for Appellant.
 Before WILKINSON and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 Theodore (Ted) Rybicki, while on administrative sick leave with full pay from employment as a United States Secret Service officer, performed secondary work for a sporting goods store in violation of Secret Service policy. Based on his concealment of this secondary employment and false testimony about it, Ted and his wife, Karen Rybicki, were convicted in multiple counts of conspiracy and perjury. In sentencing them, the district court declined to enhance their sentences based on various Sentencing Guidelines factors and, with respect to Ted, the court departed downward. The government appeals these sentencing decisions. Karen and Ted Rybicki cross-appeal, challenging various aspects of their criminal prosecution. For the reasons that follow we affirm Ted's convictions and Karen's conspiracy conviction and reverse Karen's conviction for perjury. We also vacate their sentences, remanding the case to the district court for resentencing in accordance with this opinion.
 
 
 2
 * Theodore (Ted) Rybicki, a long-time officer in the Uniformed Division of the United States Secret Service, sustained a work-related injury in June 1990 and was placed on administrative sick leave. While on administrative sick leave, he was advised that he would be retired in the near future. During sick leave, Ted Rybicki was entitled to full pay, but was prohibited by Secret Service policy from engaging in secondary employment without permission. He was also required to make monthly visits to the office clinic to ensure that he was receiving proper medical attention and to evaluate his fitness for return to duty. During these visits he was required to fill out a Medical Duty Status Form, which inquired whether he was engaged in outside employment. In responding to the question on the form whether he was engaged in outside employment, Ted checked the box "No." Contrary to his answers given on the Medical Duty Status Forms, Ted Rybicki was in fact working at a sporting goods store, The Athletic House, performing embroidery on athletic uniforms. His wife, Karen, also performed some work for the same store while at home. The owner of The Athletic House arranged to have both Ted and Karen's hours grouped into one paycheck under the name of"K. Rybicki," and compensated the two of them for their work under that name and under Karen's Social Security number. When the Secret Service learned that Ted was violating its policy banning secondary employment, it fired him on September 2, 1992.
 
 
 3
 Ted filed a lawsuit with the Merit Systems Protection Board seeking reinstatement. During the course of that lawsuit, he gave a deposition in November 1992 in which he stated that he was not employed, paid, or compensated by The Athletic House. When both Ted and Karen subsequently became targets of a criminal investigation into these matters, Karen testified before the grand jury that Ted was not "employed" by The Athletic House, even though she truthfully explained the facts relating to his work there.
 
 
 4
 Based on the underlying facts and the testimony given by Ted in deposition and by Karen before the grand jury, a second grand jury returned an indictment charging them with conspiring to commit perjury and to defraud the government, and with committing perjury. In particular, count one charged Ted and Karen with conspiring to defraud the government in violation of 18 U.S.C. Sec. 371 by impeding a government function; by making false statements; and by conspiring to commit perjury. The remaining counts charged Ted with making false declarations under oath in violation of 18 U.S.C. Sec. 1621 and charged Karen with making false declarations before the grand jury in violation of 18 U.S.C. Sec. 1623(a). Ted was convicted of the conspiracy count and all perjury counts except one. Karen was convicted of the conspiracy count and one count of perjury. In sentencing Ted to three years of probation, including four months of home confinement, the district court declined to apply various enhancements recommended in his presentence report and granted a five-level downward departure. In sentencing Karen to two years of probation, including 60 days of home confinement, the district court declined to impose various enhancements recommended in her presentence report.
 
 
 5
 On appeal, the government challenges various aspects of Ted and Karen's sentences. Ted and Karen cross-appeal.
 
 II
 
 6
 * Ted and Karen Rybicki contend that their convictions on every count should be reversed because of prosecutorial misconduct during closing argument because the assistant U.S. attorney vouched for the credibility of the government's witnesses. Ted notes that the government stated with respect to a prosecution witness that he "has got nothing to gain if he is not truthful." Ted also complains about the government's reference to defendants' tax returns, which were not in evidence.
 
 
 7
 Having carefully reviewed the challenged remarks made by the government, we cannot conclude that such remarks so prejudicially affected defendants' substantial rights so as to deprive them of a fair trial. See United States v. Curry, 993 F.2d 43, 45 (4th Cir.1993).
 
 B
 
 8
 Ted and Karen Rybicki also claim that the evidence of conspiracy was insufficient as a matter of law. Their argument rests principally upon the contention that the underlying acts of perjury were not adequately proved with respect to the conspiracy to commit perjury prong of their conspiracy count. We address this contention in our discussion of the perjury convictions in parts III A and IV B, below.
 
 
 9
 With respect to the conspiracy to defraud the government prong of their conspiracy count, Ted and Karen contend that it is not a crime to conspire to violate an internal Secret Service policy banning secondary employment during sick leave. They argue that such a prosecution would essentially render criminal the violation of a noncriminal administrative policy. See United States v. Licciardi, 30 F.3d 1127, 1133 (9th Cir.1994) (stating that even though the defendant may have impaired a government agency's functions, the government offered no evidence that the defendant intended to defraud the United States and a conspiracy to violate an agency regulatory scheme could not lie on such ground).
 
 
 10
 This argument fails to appreciate that the essence of this prong of the conspiracy count is that Ted and Karen conspired to defraud the United States and not simply to violate an administrative regulation. There was ample evidence to support the indictment in this regard. For example, Joseph Conroy and Kathie Eudi, colleagues of Karen at the law firm of Henry & Conroy, testified in some detail that Karen admitted to the coordinated efforts of herself and Ted to defraud the Secret Service. For instance, Conroy, a partner in the firm, described an admission made by Karen at a social affair:
 
 
 11
 Karen Rybicki stated that the checks were being written to her for work under her Social Security number for work that she herself had not performed. The reason that those checks were being written, despite the fact that she hadn't done the work, was that there was a third person who was actually performing the work.
 
 
 12
 The third person was a Secret Service agent who was fully disabled or was on full disability status and was precluded because of that status from any sort of secondary employment, so the essence of having or the reason that the checks were being written to Karen was to obfuscate or hide the fact that this third person was actually performing those services.
 
 
 13
 Ample circumstantial evidence was also presented with respect to fraudulent paperwork arranged with The Athletic House involving W-2 forms, the use of the ambiguous employee name "K. Rybicki," and the use of Karen's Social Security number. In short, the Rybickis' contention that the evidence was insufficient on the conspiracy count is without merit.
 
 III
 
 14
 Ted Rybicki further challenges various aspects of his convictions.
 
 
 15
 * First he contends that the underlying counts charging him with making false statements under oath were not proved. In these counts he was charged with making false statements during the course of a deposition about his employment and his relationship with The Athletic House. In that deposition he testified that he was never employed by The Athletic House; that he did not get paid by The Athletic House; that he went to The Athletic House on weekends with his wife but that it was she who operated the embroidery machine and who was hired by The Athletic House; that Karen was paid by The Athletic House but that he was not; that The Athletic House hired his wife to run the embroidery store part-time; and that during the course of his relationship with The Athletic House he had never received any money in compensation for his services there.
 
 
 16
 Ted contends that these statements made by him were technically true because paychecks for work done by himself and Karen were made out in Karen's name and that therefore Karen, and not he, was the employee. He argues that "employment" is a technical legal term and that he did not commit perjury when he stated that he was not employed at The Athletic House.
 
 
 17
 When Ted's deposition testimony, however, is placed next to the evidence that Ted, and not Karen, went to The Athletic House to perform work on the embroidery machine; that Karen performed some work at home; that the paychecks from The Athletic House were set up in the name of "K. Rybicki" to conceal Ted's work there; and that the paychecks to K. Rybicki were for work that both Ted and Karen performed, we can only conclude that Ted's arguments have no merit. The jury had ample evidence to convict him of perjury in violation of 18 U.S.C. Sec. 1621 and to convict Karen and Ted of conspiracy to commit perjury as well.
 
 B
 
 18
 Ted next contends that the court improperly admitted evidence of a statement made by Karen which implicated him in the conspiracy to conceal his secondary employment. He argues that the statement was admitted in violation of his rights under the Confrontation Clause as articulated in Bruton v. United States, 391 U.S. 123 (1986) (holding that the admission of a non-testifying codefendant's statement inculpating the defendant by name violated the defendant's Confrontation Clause rights). Because Ted's name was redacted from any statement imputed to Karen, we reject Ted's argument. See United States v. Vogt, 910 F.2d 1184, 1191-92 (4th Cir.1990) (declining to extend Bruton 's protection where defendant's name was redacted from non-testifying codefendant's statement which incriminated defendant by inference), cert. denied, 498 U.S. 1083 (1991). See also Richardson v. Marsh, 481 U.S. 200 (1987) (declining to extend Bruton 's protection to circumstances where defendant's name is redacted, even though the statement's application to defendant is linked up by other evidence improperly admitted against the defendant).
 
 IV
 
 19
 Karen Rybicki also challenges her convictions, contending that the district court erred in failing to dismiss the indictment against her because the government refused to let her testify before the grand jury charged with the decision whether to indict her, contrary to Karen's agreement with the government. She also contends that the government's proof of perjury was insufficient as a matter of law.
 
 
 20
 * Once Karen was informed that she was a target in the government's criminal investigation, she sought an opportunity to testify before the grand jury, but indicated that she wished to testify only on the condition that she could address the grand jury that would actually vote whether to return an indictment. Karen was given the opportunity to testify before that grand jury, but for reasons relating to matters involving co-defendants and the need to delay the grand jury's deliberations, that grand jury was dismissed without returning any indictments. When a second grand jury was later empaneled, the government did not allow Karen an opportunity to testify before it. Instead, it presented the second grand jury with a transcript of Karen's testimony before the first grand jury. The second grand jury indicted Karen for perjury in connection with her testimony before the first grand jury.
 
 
 21
 On appeal, Karen argues that the government "hoodwinked" her into relinquishing her Fifth Amendment privilege against self-incrimination by defaulting on its promise to let her testify in person before the indicting grand jury. Since the government could not have compelled her to testify before the grand jury, she argues, it was required to adhere to the terms of the agreement it reached with her regarding the conditions of her testimony before the first grand jury. She contends that, were it not for the government's assurances, she would not have testified in the first place and therefore would not have been charged with perjury. She claims that there is "grave doubt" as to whether the second grand jury would have indicted her if she had testified before them in person, pursuant to her agreement with the government. The government's abuse in this regard, she argues, warrants dismissal of the indictment under Bank of Nova Scotia v. United States, 487 U.S. 250 (1988) (holding that dismissal of an indictment is appropriate if there is grave doubt whether the grand jury's decision to indict was free from influence related to prosecutorial misconduct).
 
 
 22
 The government responds that although both sides had an "expectation" that Karen would testify before the indicting grand jury, such expectation did not constitute a contractual obligation on the part of the government and that the government was free to change its prosecutorial course. We agree. No evidence has been presented of any binding commitment or of any bad faith on the government's part. On the contrary, the government has offered evidence that it was not prudent for it to continue with the first grand jury because of legitimate prosecutorial considerations unrelated to Karen Rybicki. On this record, we do not find prosecutorial misconduct.
 
 B
 
 23
 Karen next contends that the evidence of perjury presented by the government against her was insufficient as a matter of law. She was convicted of one count of making a false declaration before the grand jury in violation of 18 U.S.C. Sec. 1623 based on her statement that Ted Rybicki never "actually became an employee of The Athletic House."
 
 
 24
 Karen argues that her statement that Ted was never an employee was taken out of context and that her subsequent testimony explained exactly what she meant. In the pages that followed her statement about Ted, she explained that Ted trained on the embroidery machine at The Athletic House and then began working on the embroidery machine. She stated that he was there "pretty much every day" doing embroidery work during the year 1991. She acknowledged that The Athletic House paid him for this work and she stated that she assumed it paid him for all the embroidery work he performed in 1991. She testified that it was her understanding that the time card in her name reflected hours that both she and Ted spent at The Athletic House. And she testified that both Ted and she worked at The Athletic House. She concluded her testimony by stating: "Yes, we got paid under my name. Yes we got paid under my Social Security number." When Karen's statement that Ted never actually became an employee is coupled with her truthful explanations about the actual relationship between The Athletic House and Ted, her explanation that when she used the word "employee," she meant the person named on the W-2 form and on the paychecks, is seen to be truthful. While an argument can be made that Karen testified falsely when she stated, without more, that Ted Rybicki never actually became an employee of The Athletic House, a perjury conviction on this ground cannot be sustained in light of her explanations that followed immediately attesting that he worked at the store every day, was paid for his work, and that his pay was included under her name and Social Security number. Accordingly, we conclude that Karen's conviction for perjury based on a single statement taken out of context in isolation is insufficient as a matter of law when considering her full testimony given in connection with that statement.
 
 V
 
 25
 On its appeal, the government challenges several sentencing rulings made by the district court. In connection with Ted Rybicki it contends that the district court erred (1) in failing to recognize a loss exceeding $40,000 and in thereby failing to sentence him at a level established for that loss under U.S.S.G. Sec. 2F1.1; (2) in rejecting a two-level enhancement under U.S.S.G. Sec. 3C1.1 for obstruction of justice; and (3) in departing downward five levels based on reasons already taken into account by the Sentencing Guidelines. In connection with Karen Rybicki, the government contends that the district court erred in refusing to enhance her sentence two levels for more than minimal planning under U.S.S.G. Sec. 2F1.1 because the court misunderstood the basis for that enhancement. We address these contentions in order.
 
 
 26
 * The government contends that Ted Rybicki received $62,025 in disability pay from the Secret Service while he worked at The Athletic House in violation of the Secret Service's administrative leave policy and that this $62,025 represents a loss to the government which should serve as a basis for enhancing Ted's sentence. Under U.S.S.G. Sec. 2F1.1(b)(1)(F), a defendant's offense level is enhanced five levels for any loss between $40,000 and $70,000.
 
 
 27
 In rejecting this enhancement, the district court noted that in response to defendant's motion for a more definite statement and for a bill of particulars, the government consistently stated throughout the pretrial and trial periods that its case did not involve a claim that defendants' fraudulent conduct involved loss of money to the government. Rather, the government claimed that the fraud caused the loss of the Secret Service's ability properly to enforce its policies and procedures. Moreover, the court found that there was no evidence on the issue of financial loss to the government presented during the trial. On the contrary, because of Ted's disability, he was not able to perform his duties as a Secret Service officer and thus would have been entitled to receive the $62,025 compensation had he not been in violation of the policy against secondary employment.
 
 
 28
 Accordingly, we conclude that the district court did not clearly err in declining to enhance Ted's sentence five levels based on the amount of loss to the government. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 B
 
 29
 The government next contends that the district court erred in refusing to enhance Ted's offense level by two levels pursuant to U.S.S.G. Sec. 3C1.1 for obstruction of justice. The government argues that Ted's sentence should be enhanced because his trial testimony was false.
 
 
 30
 The district court accepted an enhancement of Ted's perjury offense by three levels for substantial interference with the administration of justice pursuant to U.S.S.G. Sec. 2J1.3(b)(2), but it refused to enhance further for obstruction of justice because it felt that the government was "heaping it on" and the substantial interference enhancement led to an offense level that was "more than sufficient."
 
 
 31
 We conclude that the district court's reasoning in declining to apply this enhancement is flawed. Under the Sentencing Guidelines, district courts are not authorized to exercise discretion to seek the "right result" or to bypass the requirements of the Guidelines to achieve that end. See United States v. Harriott, 976 F.2d 198, 202-03 (4th Cir.1992). Because the district court failed to give a proper reason for refusing to apply the obstruction of justice enhancement under U.S.S.G. Sec. 3C1.1, we remand the case to the district court to resentence Ted.
 
 C
 
 32
 The government challenges the district court's downward departure from offense level 15 to level 10 with respect to Ted's perjury conviction. The district court based its decision to depart downward on the confluence of the following factors, while acknowledging that no single factor alone would justify departure: Ted was a highly decorated veteran of the Vietnam War who had saved a civilian's life during the My Lai incident; he had an unblemished record of 20 years of service to his country in the military and in the Secret Service, including service at the White House; he had a nine year old son with neurological problems who was in need of special supervision, while his wife's mental health is fragile; he is recovering from an alcohol abuse problem and requires counseling; and this offense was, relatively speaking, not a really serious one and the scheme to defraud herein did not involve "real fraud." The district court also noted that Ted's status as a convicted felon--which prohibits him, an experienced firearms handler and instructor, from ever touching a firearm again and from voting for the rest of his life--constitutes sufficient punishment when coupled with his sentence of probation. The court concluded that a prison term "makes absolutely no sense in this case."
 
 
 33
 Under 18 U.S.C. Sec. 3553(b) a sentencing court is required to impose a sentence within the Sentencing Guideline's range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Barring extraordinary family responsibilities, which were not established in this case, a defendant's family ties or responsibilities are not relevant to the sentencing court's determination whether a sentence should be applied outside the applicable Guidelines's range. See U.S.S.G. Sec. 5H1.6; United States v. Goff, 907 F.2d 1441, 1446 (4th Cir.1990). Barring extraordinary circumstances, not shown here, defendant's alcohol abuse is not relevant to the court's determination whether a sentence should be applied outside the applicable Guidelines range. See U.S.S.G. Sec. 5H1.4; Goff, 907 F.2d at 1445. Barring extraordinary circumstances, not shown here, defendant's military service or other prior good works are not relevant in determining whether a sentence should be applied outside the applicable Guidelines range. See U.S.S.G. Sec. 5H1.11. Furthermore, "[v]iewing the factors cumulatively adds nothing significant to the calculus." Goff, 907 F.2d at 1447. Therefore, we conclude that in sentencing Ted for perjury, the district court erred in departing downward based on the reasons articulated above.
 
 D
 
 34
 Finally, with respect to Karen Rybicki's sentence, the government contends that the district court erred in declining to enhance her sentence by two levels based on the ground of more than minimal planning. See U.S.S.G. Sec. 2F1.1(b)(2). "More than minimal planning" is defined as "more planning than is typical for commission of the offense in a simple form" and also exists "if significant affirmative steps were taken to conceal the offense, other than conduct to which Sec. 3C1.1 (Obstructing or Impeding the Administration of Justice) applies." See U.S.S.G. Sec. 1B1.1, comment. (n. 1(f)).
 
 
 35
 At Karen's sentencing hearing, the district court found that "there is no solid evidence that [Karen] was involved in this case at the planning stage." The court stated that "there is no evidence in this record that Mrs. Rybicki planned for her husband to be employed at [The Athletic House].... I don't, therefore, feel that the level of involvement of Mrs. Rybicki requires that that two points be given to her [for more than minimal planning]." What the district court overlooked, however, is that the enhancement is also justified if "significant affirmative steps [other than those constituting obstruction of justice] were taken to conceal the offense." See U.S.S.G. Sec. 1B1.1, comment. (n. 1(f)). In this case there is ample evidence for the district court to conclude, if it so chooses, that Karen took steps to conceal the nature of her husband's involvement at The Athletic House. Because the district court failed to recognize the significance of these factors, we remand the case also to resentence Karen.
 
 VI
 
 36
 In summary, therefore, we affirm Ted Rybicki's convictions on all counts and Karen's conviction for conspiracy, and we reverse Karen's perjury conviction. We remand the case for resentencing both Ted and Karen in accordance with this opinion.
 
 
 37
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.