**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4342

JAMES DARREN TAYLOR,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Richard L. Voorhees, Chief District Judge.
(CR-94-40)

Submitted: May 30, 1997

Decided: September 5, 1997

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Paul Byers, Aurora, Indiana, for Appellant. Mark T. Calloway, United
States Attorney, Gretchen C.F. Shappert, Assistant United States
Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Darren Taylor was convicted by a jury of conspiracy to possess with intent to distribute and to distribute cocaine and crack cocaine between September 1993 and February 1994 in violation of 21 U.S.C. § 846 (1994). He was sentenced to life imprisonment. Taylor appeals his conviction, alleging that the evidence was insufficient and that the district court abused its discretion in admitting evidence of other bad acts under Fed. R. Crim. P. 404(b). He also contends that the district court clearly erred in sentencing him by finding that he was a leader in the conspiracy. United States Sentencing Commission, Guidelines Manual, § 3B1.1 (Nov. 1995). We affirm.

The government introduced evidence at trial which established that Taylor worked with Tony Osias, Burt Jones, and Willie Felder to buy powder cocaine in New York and distribute it as crack in Charlotte, North Carolina, from the fall of 1993 until Felder's arrest in February 1994. Both Felder and Washington testified at Taylor's trial that Osias paid them to fly to New Jersey on a regular basis, sometimes accompanied by Osias or Jones, where they met Taylor, known to them as "Buff." Taylor drove either Osias or Jones (depending on who was present) into New York to buy cocaine from the source. Taylor cooked the cocaine into crack at his girlfriend's house in New Jersey, after which it was packaged and transported back to North Carolina. Felder and Washington were students at the University of North Carolina at Charlotte during that time. Jones was not a student; he lived with Taylor in New Jersey and with Osias in North Carolina. After Osias was arrested while delivering drugs in October 1993, he was expelled from the school. He and Jones stayed in hotels thereafter. In the fall of 1994, Osias enrolled at North Carolina Agricultural and Technical State University in Greensboro.

Over defense objection, the government presented evidence that, on January 4, 1995, Taylor was stopped for speeding near Greensboro. He was driving a black Infiniti which was registered to "Dennis Marshall." Taylor told the officer his name was "Craig Lyons" and presented a driver's license in that name. He said first that the car belonged to his cousin, James Taylor, and then said it belonged to his

cousin's boss. A computer check of the vehicle revealed that Taylor had given the officer false information. He then admitted that his name was James Taylor. He was carrying $13,400 in cash with which he said he intended to purchase two Rolex watches. He said that $6000 belonged to him, but refused to say whose money the remainder was, and (after several inconsistent statements) said that he was unemployed. Taylor was taken to the police station for questioning and later released.

The government also introduced a statement Taylor made on March 1, 1995, the day he was arrested at the airport in Newark, New Jersey. Taylor was carrying $2000 in cash which he said he won gambling, and Social Security cards in his own name and Craig Lyons' name. Taylor told the agents that from 1992 to 1994 he had obtained cocaine in New York for the Osias organization and cooked it into crack for Osias and his couriers. He also said that, on one occasion, he had gone to North Carolina to cook half a kilogram of crack for Osias because he was the only one who knew how to do it. Osias, who had been charged in the same indictment and pled guilty, testified that he and Jones* headed the conspiracy and that Taylor had never been involved.

To prove a § 846 conspiracy, the government must show that there was an agreement between two or more persons to violate the federal drug laws, that the defendant knew of it, and that he voluntarily joined it. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (in banc), cert. denied, 65 USLW 3586 (U.S. Feb. 24, 1997) (No. 96-6868). A conviction must be sustained if the evidence, viewed in the light most favorable to the government, is sufficient for a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. See United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993); Glasser v. United States, 315 U.S. 60, 80 (1942). On the record presented here, we find that the evidence was sufficient to support the jury's verdict.

Taylor also contests the admission of testimony that he possessed large sums of money and gave false identification to police in 1995. He argues that this was evidence of other bad acts which should have

_____

*Jones was a fugitive.

3

been excluded under Federal Rule of Evidence 404(b). Before trial, the government gave notice that it intended to offer evidence about the January 1995 traffic stop. Taylor asked that the evidence be excluded under Rule 404(b) as evidence of other bad acts. The district court found that the activity in Greensboro was "an integral part of what was going on in Charlotte during the charged conspiracy," and therefore did not come within the Rule. Acts intrinsic to the charged crime do not fall under Rule 404(b). See United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996). We agree that the evidence permitted the inference that Taylor and Jones continued their drug trafficking after February 1994, even if the jury credited Osias's testimony that he stopped dealing drugs after Felder's arrest. Therefore, we find that the district court did not abuse its discretion in admitting the testimony concerning the January 1995 stop. Nor was the evidence more prejudicial than probative. Fed. R. Evid. 403. Taylor did not specifically object to the agent's testimony that he possessed $2000 on the day of his arrest. We find that the admission of this evidence was not plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732-36 (1993) (defendant must show error which was obvious, which prejudiced him, and which seriously affects the fairness, integrity, or public reputation of judicial proceedings).

Finally, Taylor alleges that the district court erred in giving him a four-level adjustment for being a leader or organizer in the offense. United States Sentencing Commission, Guidelines Manual, § 3B1.1(a) (Nov. 1995). The defendant's role is determined by his relevant conduct, not merely by the conduct underlying the offense of conviction, see United States v. Fells, 920 F.2d 1179, 1183-84 (4th Cir. 1990), and the district court's factual finding on this issue is reviewed for clear error. See United States v. Harriott, 976 F.2d 198, 202 (4th Cir. 1992). Taylor argues that there was no evidence that he controlled any other conspirator. Control of others is one factor which may indicate that a defendant is a leader, but it is not the only factor. See USSG § 3B1.1, comment. (n.4)). The nature of the defendant's contribution to the joint criminal effort may be the significant factor. Id. Here, Taylor boasted to the arresting agents that the others depended on him to cook the cocaine into crack, and his statement was corroborated by the testimony of Felder and Washington. In any case, the government introduced evidence at the sentencing hearing that Taylor and Jones had been distributing crack in Greensboro after

4

February 1994, and that Taylor supervised the operation of five crack houses there. With this evidence before it, the district court did not clearly err in finding that Taylor was a leader in the offense.

We therefore affirm the conviction and the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>