UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4340

ANDREA RENEE MYERS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CR-95-1059)

Submitted: April 28, 1998

Decided: July 29, 1998

Before WILKINS and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Mikell Ross Scarborough, GARRETT LAW OFFICES, Charleston,
South Carolina, for Appellant. J. Rene Josey, United States Attorney,
Miller W. Shealy, Jr., Assistant United States Attorney, Charleston,
South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Andrea Renee Myers pled guilty to conspiracy to distribute and possess with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. § 846 (1994). She appeals her 262-month sentence, contending that the district court clearly erred in finding that she obstructed justice by lying at her guilty plea hearing, see USSG § 3C1.1, that she did not have a mitigating role, see USSG § 3B1.2, and that she entered the conspiracy within two years of her release from custody, see USSG § 4A1.1(e). She also challenges as an abuse of discretion the district court's decision to depart upward by three levels for her role in managing the conspiracy's money. See USSG § 3B1.1, comment. (n.2). We affirm.

From late 1992 to 1996, Myers lived with Theodore (Teddy) Jenkins, Jr., the leader of the conspiracy. She sold crack to several cooperating witnesses, once during a controlled purchase, and traveled with Jenkins to New York, Florida, and Georgia to obtain cocaine powder. Myers usually carried the cocaine on her person on the return trip. The cocaine was then cooked into crack and packaged for sale. In June 1995, Myers and Jenkins were stopped by police at LaGuardia Airport in New York and $162,000 in cash was seized from Myers. When she pled guilty, the district court questioned Myers about her part in the conspiracy and Myers attempted to minimize her participation, stating that she had been uncertain whether Jenkins was engaged in drug trafficking. She then retracted that statement, and admitted accepting money owed to Jenkins, but denied taking an active part in the conspiracy--to the point of denying portions of the government's factual basis concerning her transportation of cocaine and sales of crack. She said she claimed ownership of the bag containing the $162,000 to protect Jenkins.

The probation officer recommended an offense level of 32 (50-150 grams of crack) with no adjustments, a criminal history category of

2

III (5 points), and a resulting guideline range of 151-188 months. Because her offense involved more than 50 grams of crack and she had a prior felony drug conviction, Myers was subject to a mandatory sentence of 240 months, but at her sentencing the government withdrew the notice of a prior conviction required for an enhanced sentence under 21 U.S.C. § 851 (1994). In her interview with the probation officer, Myers said she met Jenkins in the summer of 1993, that their relationship became serious around the end of 1994, and that he offered to take her shopping in New York in June 1995 (the trip on which the money was seized). She admitted two trips to New York but denied that drugs were transported on either trip. She admitted accepting money owed to Jenkins occasionally, but denied any involvement in transporting or distributing crack.

The government requested an adjustment for obstruction of justice and an upward departure based on Myers' responsibility for managing the property and assets of the conspiracy. Myers opposed an upward departure and requested a downward departure on the grounds of duress and diminished capacity and because she had a young child. She also disputed the criminal history calculation and the lack of adjustments for a mitigating role and acceptance of responsibility.

At the sentencing hearing, Teddy Jenkins testified that he first met Myers while he was buying drugs from another dealer; Myers was the dealer's girlfriend at the time. Jenkins became romantically involved with Myers in late 1992 or early 1993. He said that Myers knew then that he was selling drugs. He said that Myers accompanied him on every trip he made to New York to buy cocaine, that she helped count the money before the trip and before the purchase, went with him to make the purchase, and later assisted in packaging crack for sale. Jenkins also testified that he and Myers controlled and doled out the money to other conspirators, and that Myers paid all the bills from that money. Pagers and cellular phones used by members of the conspiracy were in her name. John Albert Williams, who was Jenkins' partner until they had an argument over money, testified that Myers frequently helped Jenkins cook and bag crack. Myers did not testify or present evidence. The district court found that Myers had a much greater role in the offense than she was willing to admit and that she had lied under oath at the plea hearing. The court granted the government's request for an obstruction of justice adjustment.

3

On appeal, Myers first suggests that the adjustment is unconstitutional because it was based on compelled testimony--answers she gave in response to the district court's questions at the guilty plea hearing--and thus chills a defendant's right to testify. This claim is baseless. A defendant who pleads guilty waives the right to remain silent. See United States v. Hicks, 948 F.2d 877, 885-86 (4th Cir. 1991). Myers was informed of this fact at the beginning of the Fed. R. Crim. P. 11 hearing. Moreover, she was warned that she was under oath and that false statements would subject her to the penalties for perjury.

Second, Myers argues that the factual finding of obstruction was clearly erroneous because she admitted the essential facts of her offense and her denials were simply the result of confusion about legal terms such as "role in the offense" and "trafficking." A person testifying under oath commits perjury by willfully giving false testimony on a material matter; confused or mistaken testimony is not perjury. See United States v. Dunnigan, 507 U.S. 87, 94 (1993); see also USSG § 3C1.1, comment. (n.3(f)) (obstruction includes willfully providing false material information to judge). At sentencing, however, the district court went through Myers' testimony in detail, pointing out numerous statements in which she misrepresented the level of her participation in the conspiracy. Our review of her testimony discloses that the district court did not clearly err in finding that Myers' answers were dishonest rather than confused.

Next, Myers maintains that the evidence showed she was entitled to a mitigating role adjustment and a downward departure because she simply took orders from and was controlled by Jenkins. In fact, as the district court found, the evidence revealed that she voluntarily took an active and significant part in the conspiracy. We therefore find that the district court did not clearly err in finding that Myers had more than a minimal or minor role in the offense. See United States v. Harriott, 976 F.2d 198, 202 (4th Cir. 1992) (standard of review). We do not review the district court's decision not to depart downward on the ground that Myers' participation was the result of duress. See United States v. Bayerle, 898 F.2d 28, 31 (4th Cir. 1990).

The district court's upward departure based on Myers' role in the conspiracy is reviewed for abuse of discretion. See Koon v. United

4

States, 518 U.S. 81, ___ (1996); United States v. Brock, 108 F.3d 31, 34 (4th Cir. 1997). A defendant does not qualify for an aggravated role adjustment unless he led, organized, managed or supervised another participant. See USSG § 3B1.1, comment. (n.2). However, the commentary specifically states that a departure may be warranted for a defendant who did not lead or manage other participants but who "exercised management responsibility over the property, assets, or activities of a criminal organization." Id.

Myers contends, first, that the departure was unreasonable because Jenkins and other co-defendants received lower sentences and, second (in her reply brief), that the evidence did not warrant a departure. Sentencing disparity is not a basis for departure. See, e.g., United States v. Hall, 977 F.2d 861, 863-64 (4th Cir. 1992). Similarly, it is not a reason to forego a departure which is otherwise warranted. Here, the district court found Jenkins' testimony about Myers' role credible, a determination we do not review. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Based on Jenkins' testimony, the court's finding that Myers managed property and money for the conspiracy was not clearly erroneous. See Rybicki, 96 F.3d at 757 (standard of review). The management of property and assets is an encouraged factor for departure and not one which is otherwise taken into account under USSG § 3B1.1. Because the district court's decision to depart was based on its factual finding that Myers had a mangerial role, our review is for clear error. See Rybicki, 96 F.3d at 758. We cannot say that the district court clearly erred here. Therefore, we conclude that the departure was not an abuse of discretion.

Finally, Myers argues that the district court clearly erred in finding that her participation in the conspiracy began less than two years after her release from custody and awarding two additional criminal history points as a result. See USSG § 4A1.1(e). Myers was released on April 30, 1991. Jenkins testified that he and Myers were dating by the end of 1992, that he was selling crack at the time, that he made his first trip to New York with Myers in early 1993, but made several trips to Georgia to buy crack before that, and that Myers went to Georgia with him more than once. On this evidence, the district court did not clearly err in finding that Myers was involved in the conspiracy during 1992, within two years of her release from custody.

5

For the reasons discussed, we affirm the sentence imposed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6