**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

GREGORY RICKY BANKS; BANKS AUTO
PARTS, INCORPORATED,
<u>Defendants-Appellants,</u>

and

No. 98-4328

RONALD BANKS, a/k/a Ronnie Banks;
CORNELIUS WOODS; JEFFERY L.
DICKSON; MILTON JAMES JOHNSON,
JR., a/k/a Mike Johnson; ANTHONY
JOSEPH JOHNSON, a/k/a Tony
Johnson,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-97-183-A)

Submitted: December 29, 1998

Decided: January 21, 1999

Before WIDENER and NIEMEYER, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Harvey J. Volzer, Phillip A. Gagner, SHAUGHNESSY, VOLZER & GAGNER, P.C., Washington, D.C., for Appellants. Helen F. Fahey, United States Attorney, Justin W. Williams, Assistant United States Attorney, Dennis W. Kennedy, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Gregory Ricky Banks and Banks Auto Parts, Inc. ("BAP") appeal their convictions for conspiracy to possess, transport, and sell in interstate commerce stolen motor vehicles in violation of 18 U.S.C. § 371 (1994), and for the sale and receipt of stolen motor vehicles in interstate commerce in violation of 18 U.S.C. §§ 2, 2313 (1994). For the reasons that follow, we affirm.

According to the evidence presented at trial, the Defendants partici- pated in a conspiracy to steal motor vehicles from streets and parking lots in the Washington, D.C., metropolitan area from February 1988 through June 1992. The stolen vehicles were taken by tow truck oper- ators and driven to BAP. Upon their arrival at BAP, Banks would pur- chase the vehicles. When the tow truck operator did not present the vehicle's title, Banks would require him to complete an indemnity agreement which contained the year, make, vehicle identification number, body style, model, and color of the motor vehicle. Banks would pay the tow truck operator with a BAP check, the check num- ber was recorded on the indemnity agreement, and the data regarding the transaction was recorded on logbooks maintained by BAP. There- after, the vehicles were dismantled and Banks sold the parts across the country.

2

In 1992, a task force composed of law enforcement personnel from the FBI, Virginia State Police, Virginia Department of Motor Vehicles, Stafford County Sheriff's Department, and National Insurance Crime Bureau executed a search warrant. After a four day search they identified seventy-seven stolen motor vehicles within the confines of BAP's auto salvage lot.

A jury subsequently convicted BAP and Banks of one count of conspiracy to receive and sell stolen vehicles and fifty-two counts of selling and receiving stolen vehicles. BAP was sentenced to four years' supervised probation and Banks was sentenced to fifty-one months' imprisonment. Banks and BAP filed a timely appeal.

Appellants first claim that there was insufficient evidence to support their conspiracy convictions. To sustain a conviction, this court must find that the evidence, when viewed in a light most favorable to the government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. See United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Appellants assert that this court should reverse their convictions because at trial tow truck operators Aundra Bowman and Milton Johnson testified that there was not a conspiratorial agreement between the tow truck operators and Banks. This argument is unpersuasive. At trial the Government presented the testimony of John Steven Dodge, who worked for BAP as a "parts puller."[1] Dodge identified individual tow truck operators, including Milton Johnson, Bowman, Anthony Johnson, Jeffery Dickson, Cornelius Woods, and Perry Bevels as people who brought stolen cars in and sold them to Banks. Dodge pointed out that this group of tow truck drivers would only deal with Banks. Dodge further testified that he heard Dena Banks, BAP's office manager, tell Banks that if he kept dealing with these tow truck operators he would go to jail. Finally, Dodge testified

_____

[1] The duties of a "parts puller" include removing parts from vehicles in the salvage yard and delivering them to the BAP body shop.

3

that he was present when Anthony Johnson and Dickson came to BAP to get bail money for Woods from Banks.

Likewise, BAP employee Larry D. Swanner, who worked as a "parts puller" and a counter man, identified all of the tow truck operators who brought the vehicles to BAP. He testified that he observed Woods, Anthony Johnson, and Bowman bringing in and going through late model vehicles which were in good condition and that Banks would purchase these vehicles. Swanner explained that he pulled parts from several of the vehicles that were the subject of the overt acts and substantive counts in the indictment after Banks purchased the vehicles from the tow truck operators and directed him as to which parts to remove. Swanner also recalled that he witnessed the tow truck operators taking the owners' personal belongings out of the vehicles and that Banks was present when this occurred. Finally, Swanner testified that when he confronted Banks about the possibility that these vehicles were stolen, Banks told him to stay out of it.

Richard Franklin McAfee, also a former employee of BAP, testified that he saw a Dodge Caravan in perfect condition at BAP. He testified that he was instructed to pick up two vehicles from Banks' father's home, including a 1986 Ford pickup, remove the Maryland tag from the pickup, and return the vehicles to the BAP salvage yard. McAfee was subsequently arrested because the Ford pickup was stolen out of Maryland.

In addition, Bowman and Milton Johnson pled guilty to the conspiracy charge in the same indictment that charged Banks and BAP, and Bowman described the arrangement, relationships, and cooperative efforts between the tow truck operators and Banks, which have continued for almost twenty years. Bowman also testified that he overheard Banks and Woods joke about whether the cars were stolen. Milton Johnson also corroborated the close relationships between the tow truck operators and Banks and the jokes about whether the vehicles were stolen.

FBI Supervisory Special Agent Thomas Carter testified that after conducting the search of BAP, no titles were found for the vehicles that were the subject of the counts in the indictment. In fact, Carter testified that ten of the stolen vehicles recovered had no corporate

4

paperwork of any kind. Carter further confirmed that BAP was paying well below the fair market value for the vehicles. Carter testified that once the evidence was recovered and reviewed, Woods, Dickson, Milton Johnson, Anthony Johnson, Bowman, and Bevels all pled guilty. Carter also discussed the fact that Dena Banks told him that she had seen Woods on a television program pertaining to auto thefts and advised Banks that he should stop buying cars from Woods. Nonetheless, a review of BAP's records confirms that BAP continued to purchase vehicles from Woods after the auto theft program was televised. Finally, Banks told an investigator that he was the only BAP employee who had authority to purchase, inspect, and negotiate prices for vehicles.

We find that the above evidence demonstrates that Banks had knowledge of and deliberately participated in the conspiracy. Notwithstanding that Bowman and Milton Johnson testified they did not have an agreement with Banks concerning these stolen vehicles, their testimony clearly establishes that they, as well as the other tow truck operators, considered Banks part of the conspiracy. Consequently, we find that a rational trier of fact could have found the essential elements of a conspiracy beyond a reasonable doubt.

Appellants next claim that because the district judge believed that Milton Johnson committed perjury he should have given a cautionary jury instruction regarding Johnson's testimony. Because the defense failed to request such an instruction and did not raise this issue at trial, we review for plain error. See United States v. Olano, 507 U.S. 725, 732-37 (1993). Here, the district court instructed the jury that "[i]f a witness is shown to have testified falsely concerning any material matter, you have the right to distrust such witness' testimony in other particulars, and you may reject all of the testimony of that witness, or give it such credibility as you may think it deserves." Any failure to give a more elaborate instruction concerning Johnson's testimony was harmless.

Appellants next contend that the evidence at trial established multiple conspiracies, so the district court erred by failing to instruct the jury on multiple conspiracies. Again, because the defense failed to raise this issue in the district court, this court reviews for plain error. See id. Failure to give a jury instruction on multiple conspiracies,

5

even if the evidence supports such an instruction, is not reversible error unless a defendant can show he was involved in a separate conspiracy unrelated to the overall conspiracy charged in the indictment. See United States v. Howard, 115 F.3d 1151, 1157 (4th Cir. 1997); United States v. Kennedy, 32 F.3d 876, 884 (4th Cir. 1994).

Here, the evidence presents a picture of one conspiracy in which Banks, Woods, and Anthony Johnson were the main actors, and in which other tow truck operators participated in varying degrees. Banks played a major role in each transaction that took place at BAP and even went so far as to provide bail for Woods after Woods called Banks collect from jail. "A single conspiracy exists where a `key man' is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal." United States v. Richerson, 833 F.2d 1147, 1154 (5th Cir. 1987). Here, Banks, Woods, and Anthony Johnson were the "key men," and the common goal was the receipt and sale of stolen vehicles. Even Banks himself admitted that he purchased approximately 200 to 300 late-model vehicles from Anthony Johnson over approximately fifteen years and twenty to thirty vehicles from Woods during the past year. Furthermore, Banks refused to assist the FBI in identifying suppliers of stolen vehicles and refused to abstain from purchasing more vehicles from anyone who had previously sold him a stolen vehicle. Accordingly, because the evidence at trial sufficiently proved a single conspiracy in which Banks was a primary figure, we find that there was no plain error.

Appellants argue that Dodge's testimony regarding Dena Banks' statement to Banks was inadmissable hearsay, constituting reversible error, because it did not have sufficient guarantees of trustworthiness.[2] See Ohio v. Roberts, 448 U.S. 56, 65-66 (1980). We review the admission of evidence under the hearsay rule for abuse of discretion. See United States v. Ellis, 951 F.2d 580, 582 (4th Cir. 1991). In the present case, the district court instructed the jury that it could only consider Dena Banks' statement as proof of notice and not as evidence that the statement was true. See Benedi v. McNeil-PPC, 66 F.3d

_____

[2] Specifically, Dodge testified that after Dena Banks wrote a BAP check to Woods for a car, she told Banks that if he kept dealing with these people he would go to jail.

6

1378, 1385-86 (4th Cir. 1995) (holding that the district court did not abuse its discretion in admitting the reports at issue because the jury was instructed to only consider the reports as evidence of notice and not for the truth of the matter asserted). Furthermore, Dena Banks later testified for the defense and denied on cross-examination that she made this statement. Thus, any alleged hearsay or Sixth Amendment Confrontation Clause problem was cured. Accordingly, we find that the district court did not abuse its discretion in admitting Dena Banks' statement.

Banks next claims that the district court erred in enhancing Banks' base offense level by three levels pursuant to U.S. Sentencing Guidelines Manual § 3B1.1(b) (1997), after finding that he was a manager or supervisor in the conspiracy. We review such a determination for clear error. See United States v. Harriott, 976 F.2d 198, 202 (4th Cir. 1992).

To qualify for an adjustment under this section, Banks must have been the organizer, leader, manager, or supervisor of one or more other participants. See USSG § 3B1.1, comment. (n.2); United States v. Capers, 61 F.3d 1100, 1108-09 (4th Cir. 1995). Moreover, a "`participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, comment. (n.2); see also United States v. Brinkworth, 68 F.3d 633, 641-42 (1995) (noting that a criminally responsible participant is an individual who had knowledge of and participated in the criminal activity).

Banks argues that he never managed or supervised the criminal scheme, pointing to the testimony of Bowman and Milton Johnson that he did not have an agreement with the tow truck companies and to the fact that he had nothing to do with the management or operation of these tow truck companies. This contention does not withstand scrutiny. The evidence is abundant that Banks played a supervisory role sufficient to sustain a USSG § 3B1.1(b) enhancement. Banks directed BAP employees to write checks to the tow truck operators for stolen vehicles, to chop and dismantle vehicles that were believed to be stolen, to deliver vehicle parts around the country knowing the parts came from stolen vehicles, and to perform their duties despite their concerns regarding the propriety of Banks' dealings with certain

7

tow truck operators. Further, Banks directed tow truck operators to fill out indemnity agreements to conceal his knowledge that the vehicles were stolen and negotiated the purchase price for each of these stolen vehicles. It is irrelevant that the government failed to establish that Banks was not more involved in the operation and management of the tow truck companies. Section 3B1.1 requires only that "the defendant must have exercised some control over others involved in the commission of the offense." United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir. 1990) (quoting United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990)). Therefore, we affirm the district court's application of USSG § 3B1.1 to the defendant.

Finally, we reject Appellants' assertion that the Government failed to establish a conspiracy, and therefore, their convictions on the substantive counts should be reversed and a new trial ordered. As previously mentioned, the evidence adduced at trial does not support this contention. Likewise, we find meritless Appellants' conclusory contention that the testimony of Bowman and Milton Johnson was inadmissable under Fed. R. Evid. 801(d)(2)(E).

Accordingly, we affirm Appellants' convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

8